**Linda E. SANGSTER, an Individual,
Plaintiff,**

v.

**UNITED AIR LINES, INC., a Delaware Corporation, and Air Line Pilots Association, International, a labor organization, Defendants.**

No. C–76–2426 SC.

United States District Court,
N. D. California.

Oct. 14, 1977.

Robert Tollen, Chickering & Gregory, San Francisco, Cal., for plaintiff.

Donald D. Connors, Jr., Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant United Air Lines.

Jennings, Gartland & Tilly, San Francisco, Cal., for defendant Air Line Pilots Assn.

CONTI, District Judge.

Linda Sangster sues United Air Lines, Inc. (United), and the Air Lines Pilots Association, International (ALPA), a labor organization representing stewardesses, among others, charging both with unlawful sex discrimination in employment. 42 U.S.C. § 2000e–5. She seeks reinstatement to the position of stewardess with full seniority and benefits, backpay with interest, attorney fees and costs. The matter comes before the court on plaintiff's motion for partial summary judgment on the issues of liability and reinstatement with full seniority, and on ALPA's motion for summary judgment, or, in the alternative, to dismiss the complaint for lack of jurisdiction or failure to state a claim. United does not oppose plaintiff Sangster's motion except as to liability for monetary damages. All parties agree as to the material facts, though they sometimes differ as to the construction which should be placed on them.

## FACTS

Plaintiff Sangster, then an unmarried woman, was employed by United Air Lines, Inc., as a stewardess or cabin attendant on November 24, 1961. On May 28, 1966, then still unmarried and thus eligible for continued flight duty, she accepted promotion to the non-flight position of stewardess supervisor. This change of status did not affect her seniority as a stewardess which continued to accrue in accordance with the provisions of the applicable collective bargaining agreement as though she was still on active stewardess service. Nor did it preclude a later return to stewardess status with full accrued seniority should she so choose.

On April 9, 1968, plaintiff Sangster married. She was aware that if she did so United's rules would bar her from resuming her former stewardess position, and that she would forfeit her stewardess seniority rights.[1] Nevertheless, though her sole employment interest by then was to return to stewardess status, she decided to marry, to continue as a stewardess supervisor for the time being, and to await the outcome of negotiations between United and ALPA which she had reason to believe would soon terminate the "no-marriage" policy.

United and ALPA did reach such an agreement on November 7, 1968, and on November 8, 1968, Mrs. Sangster applied for transfer to stewardess status. But the agreement was only partially retroactive and it did not protect married stewardess supervisors in her circumstances. Following an announcement to that effect by ALPA and denial of her application by United, she instituted a complaint on November 9, 1968, according to company grievance procedure. After ALPA twice refused United's suggestion that the agreement be further extended to include married stewardess supervisors, she filed a charge of unlawful employment practices with the Equal Employment Opportunity Commission on February 6, 1969, at the suggestion of a United officer.

Plaintiff Sangster continued to work as a stewardess supervisor while her company grievance was pending, but quit United's employ on or about July 16, 1969, following its denial of her complaint on June 4, 1969. Mrs. Sangster's husband was and is a pilot for United; she desired to coordinate her schedule with his, an eventuality possible only by resuming flight status and conforming her work schedule to his (an outcome possible because of seniority preferences), or by quitting any conflicting job. Refused permission to fly, she quit her conflicting stewardess supervisor position.[2]

At no time, however, did Mrs. Sangster ever discontinue her efforts to obtain redress through the EEOC. But burdened by its enormous backlog and by the complications caused by a spate of related cases,[3] the EEOC did not find until March 8, 1972, that there was reasonable cause to believe that

---

1. Due to an administrative oversight, Mrs. Sangster continued to be carried on United's stewardess seniority list until February 20, 1969, when her name was removed because of her marriage.

2. Ultimately, ALPA and United reached agreement on contract changes which would have permitted Mrs. Sangster's return to stewardess status. At the time she left United, however, Mrs. Sangster was not privy to the discussions then in prospect, and knew only, as she was informed by United's President Keck, that ALPA had twice refused United's proposal of an extension, that it was unwilling to discuss alteration of the policy further, but that further negotiations would begin July 15, 1969. ALPA and United were unable to agree on the terms of that extension until October 16, 1969, despite protestations now that both were fully in favor of it. As best Mrs. Sangster could dis-

cern when she decided to quit her supervisory job, prospects for change either through internal grievance machinery or by way of collective bargaining were dim.

3. See, e. g., United Airlines, Inc. v. McDonald, —— U.S. ——, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); United Air Lines, Inc. v. Evans, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); Collins v. United Air Lines, Inc., 514 F.2d 594 (9th Cir. 1975); Sprogis v. United Air Lines, Inc., 444 F.2d 1194 (7th Cir. 1971); Lansdale v. United Air Lines, Inc., 437 F.2d 454 (5th Cir. 1971); Inda v. United Air Lines, 405 F.Supp. 426 (N.D.Cal.1975); Kennedy v. Braniff, 403 F.Supp. 707 (N.D.Tex.1975); Gerstle v. Continental Airlines, Inc., 5 E.P.D. (CCH) § 8,647 (D.Colo.1973); Romasanta v. United Air Lines, Inc., 6 E.P.D. (CCH) § 8,806 (N.D.Ill.1972).

her charge was true, informing her then that it would begin conciliation efforts on her behalf "as soon as possible," and advising her that she would be kept informed of progress. Nothing more transpired until October 12, 1976, when the EEOC, after some prodding from Mrs. Sangster, notified her that it had been unable to reconcile her dispute, and that she had a right to sue. This action was filed nineteen days later on November 1, 1976.

It would appear that something more should have been done during this extended period, but the fault can be laid on no one party or organization. Mrs. Sangster could after some time have removed her claim from the EEOC and come into federal court for the relief she was seeking. However, she only inadvertently learned of this option sometime in 1976, and she was under no legal obligation to bypass the EEOC in any case. Similarly, she could have pressed the EEOC for speedier action. But she is no more to blame for failing to do so than are United and ALPA, which also had means to force the issue and which, it may be assumed, had even greater interest in its outcome, being subject to a number of such charges. Again, the EEOC could have acted with greater dispatch, or, if unable to do so, could have informed all concerned of its incapacity and of the availability of other legal avenues. But to have done this it must in some sense have abdicated responsibility placed on it by Congress, which reiterated in 1972 its preference for resolution of these conflicts through the EEOC though fully aware of the EEOC's acute overload.[4]

No policy or rule restricting employment as stewards to single males has ever been enforced by United. Its practice and policy of refusing to employ married persons as cabin attendants was applied solely to married women, as opposed to married men. United, as previously stated, did discontinue this policy on November 7, 1968, with respect to married women generally, but it continued to bar married stewardess supervisors from transfer to stewardess positions though all other stewardess supervisors were permitted to do so. As no parallel restriction was imposed on similarly situated male employees, the change of policy simply narrowed the sweep of United's prior sexually discriminatory policy; that policy continued in effect with respect to married female stewardess supervisors who sought flight positions as cabin attendants.[5] To the extent that United's policy pertained only to job classifications as to which there may have been no male counterpart, its marriage ban was not a bona fide occupational qualification.

The Air Line Pilots Association, International, shared in the maintenance of this practice and policy insofar as it affected Mrs. Sangster. Although its pressure and initiatives were responsible for the abandonment of the policy with respect to stewardesses (who were members of the union), it resisted for a time United's attempts to extend the same nondiscriminatory treatment to already married steward supervisors (who were members of management), notwithstanding contractual seniority rights afforded stewardess supervisors who were unmarried. As United's denial of Mrs. Sangster's application for transfer to stewardess status hinged on ALPA's opposition, its insistence on continuance of the discriminatory practice with respect to married stewardess supervisors renders it equally a cause of that denial, and an equal

---

**4.** *Occidental Life Ins. Co. of California v. EEOC,* — U.S. ——, 97 S.Ct. 2447, 53 L.Ed.2d 402, 407 (1977).

**5.** Nor did the United-ALPA agreement of October 16, 1969, which would have permitted Mrs. Sangster's transfer with full seniority had she then been with United as a stewardess supervisor, bring a full end to this discriminatory policy, but only further narrowed its impact, as by its terms the agree-

ment applied only to former stewardesses then "currently in a stewardess management . . . position." Thus, the policy continued to bar married stewardess supervisors who had left that position or otherwise failed to maintain continuous seniority, notwithstanding prior application for active stewardess service and continuous maintenance of efforts to obtain redress.

partner with United in the perpetuation of that discriminatory practice.[6]

 The court finds that United and ALPA engaged in an unlawful discriminatory employment practice by refusing or preventing employment as stewardesses to married stewardess supervisors, in that this distinction discriminated on the basis of sex without any bona fide ground for such classification. The court further finds that United and ALPA concurred in the application of this unlawful discriminatory practice to Linda Sangster on November 8, 1968, when United denied Mrs. Sangster's application for transfer to stewardess status.

## LAW

ALPA moves for summary judgment and opposes Mrs. Sangster's motion for partial summary judgment, contending that her claim under Title VII is barred because she did not file her charge with the EEOC within the filing period then in effect. In the alternative, it moves to dismiss on the ground that the action was not filed in this court within the applicable California statute of limitations, or that she was guilty of laches.

### A. Timeliness of EEOC Filing.

The court has already twice rejected ALPA's contention that Mrs. Sangster's EEOC filing was untimely. But ALPA again renews its assertion, claiming as justification that the court did not then have the guidance of the Supreme Court in its decision in *United Air Lines, Inc. v. Evans, supra,* a case arising out of the same discriminatory policy. It asserts once more that the critical date triggering the filing period was April 9, 1968, the date of plaintiff's marriage, and not November 8, 1968, the date plaintiff's application for transfer to stewardess status in fact was denied.

Lest there be doubt as to the basis of the court's ruling to the contrary, the court will consider the issue anew.

Although *Evans* had not been decided when the court issued its first order, the decision was considered by this court prior to its reconsideration of its order on June 28, 1977. The court reaffirmed that order because, among other reasons, *Evans* is not on point. Nor are the other cases now cited to the court by ALPA.

In *Evans,* the Supreme Court ruled that a complaint filed with the EEOC five years after the person aggrieved was discharged by United Air Lines, and one year after she was rehired by United, though with no seniority, could not be regarded as having been brought within 90 days of a triggering discriminatory act. Neither the fact that she was treated less favorably than males hired after her termination in 1968 and prior to her re-employment in 1972, and thus with less total service, nor the fact that the seniority system gave present effect to that past discriminatory practice, was adequate to constitute a present, continuing violation sufficient to render her EEOC filing timely.

This case is plainly distinguishable. Not only does it not raise a question of "continuing" violation, but, as the court has twice ruled, the actionable injury to Mrs. Sangster occurred when United denied her application for transfer. The court does not accept ALPA's contention that the denial of plaintiff's application for transfer was already a "fait accompli" on April 9, 1968, or that rejection of her application constituted no more than "crystallization" of an act of discrimination which automatically took place when plaintiff married. Although Mrs. Sangster was aware of United's policy when she married on April 9, 1968, and that her marriage would subject her to loss of stewardess seniority and eligibility for transfer to stewardess status, it did not in

---

6. Both United and ALPA continue to oppose Mrs. Sangster's reinstatement as a stewardess on the same terms as would have applied to other similarly situated stewardess supervisors. United is willing to reinstate Mrs. Sangster, and did so for one day on May 1, 1977, but is unwilling to pay any back wages. ALPA at one stage seemed willing to accept Mrs. Sangster's reinstatement, but it strenuously opposes reinstatement with full seniority.

fact have that effect on her until she applied for transfer and was denied. ALPA's disingenuous sophistry cannot overcome the facts.

■ As the court previously ruled, it is the doing of an actual act of unlawful discrimination against a specific aggrieved person which makes it an unlawful employment practice proscribed by Title VII. Only when the deed is done can that aggrieved person be said to possess a cause of action, and thus only by its doing can the filing period be triggered. The prospect of its doing or the existence of a policy committing the doer to the doing is not sufficient, no matter how imminent or certain application of the policy to the aggrieved person may be. Unlawful employment practices, the court again states, do not float free in the air; they exist only when attached to a particular person. A discriminatory policy does not become an unlawful discriminatory practice until a specific person has felt the sting of that policy. Indeed, unless a complaining party can show enforcement of the policy against him or her sufficient to provide standing, no suit thereon could be entertained.

■ Here, although plaintiff knew that she was considered by United to have forfeited her seniority and transfer rights on the day she married, United did not enforce its policy against her until November 8, 1968. Her cause of action accrued as of that date, and on that date the 90-day filing period began. Her filing with the EEOC, therefore, was timely.

B. *Timeliness Under California Statutes of Limitation.*

ALPA next contends that plaintiff's action, filed in this court on November 1, 1976, is barred by either of two analogous state statutes of limitations. ALPA argues that either the one-year tort liability statute, Cal.Civ.Proc.Code § 340(3), or the three-year statutory liability statute, *id.* § 338(1), will bar the action, since it was filed more than eight years after the cause of action accrued. *See, e. g., Kirk v. Rockwell International Corp.,* 432 F.Supp. 627 (C.D.Cal.1977); *Clayton v. McDonnell Douglas Corp.,* 419 F.Supp. 28 (C.D.Cal. 1976), *appeal dism'd on other grounds* (9th Cir. 1977).

■ This contention was foreclosed by the Court of Appeals for the Ninth Circuit in *Cunningham v. Litton Industries,* 413 F.2d 887, 890–91 (9th Cir. 1969):

> We hold that the . . . period within which suit may be filed in federal district court begins to run when the aggrieved party received notice of failure to effect voluntary compliance from the EEOC, regardless of the time the Commission has taken to process the charge.

> . . . . .

> The statutory scheme of Sec. 706 [section 2000e–5] is thus fulfilled by allowing conciliation attempts to continue as long as they may appear fruitful, while at the same time giving either the aggrieved party or the respondent the right to precipitate the EEOC action of notification, which triggers the "statutory" period for filing suit . . . .

*See Cleveland v. Douglas Aircraft Co.,* 509 F.2d 1027 (9th Cir. 1975); *Jefferson v. Peerless Pumps Hydrodynamic,* 456 F.2d 1359 (9th Cir. 1972).

There is nothing in *Occidental Life Insurance Company of California v. EEOC, supra,* which would render this rule less binding on the court. Insofar as the opinion has any applicability to this private action, *Occidental Life* disapproves mechanical importation of state statutes of limitations. It is important, the Court said, that resort to such statutes

> not frustrate or interfere with the implementation of national policies . . . .
> State limitations periods will not be borrowed if their application would be inconsistent with the underlying policies of [Title VII].

—— U.S. at ——, 97 S.Ct. at 2455, 53 L.Ed.2d at 412.

■ As that national policy requires "employment discrimination claims . . [to] be investigated by the EEOC and,

whenever possible, administratively resolved before suit is brought in federal court," *id.* 97 S.Ct. at 2456, 53 L.Ed.2d at 412–13, it would hardly be appropriate to rely on a state statute of limitations here where plaintiff, perhaps to her present disadvantage, relied on EEOC efforts for eight years. Nothing in the Act explicitly requires the EEOC to conclude its conciliation efforts within any maximum period of time, nor should state statutory limits be permitted to compel an aggrieved person to abandon this preferred procedure in favor of a private enforcement action. *See id.,* 97 S.Ct. 2447, 53 L.Ed.2d at 407, 411–14.

■ Mrs. Sangster was notified by the EEOC on October 12, 1976, that conciliation efforts had failed. She filed civil suit in this court on November 1, 1976, well within any applicable federal period of limitations. In view of the Ninth Circuit's holding in *Cunningham,* this court cannot hold that any California statute of limitations bars the action. This contention, therefore, is rejected.

C. *Laches.*

■ ALPA finally contends that the action should be barred under the doctrine of laches. *Cf., e. g., Fowler v. Blue Bell, Inc.,* 14 F.E.P.Cas. 1009, 1012 (N.D.Cal.1976). ALPA claims prejudice to its members by reason of any reinstatement with seniority which might be ordered, and claims that Mrs. Sangster's failure to seek an earlier ruling from the EEOC that conciliation had failed was inexcusable lack of diligence.

Mrs. Sangster's reliance on the EEOC to conciliate her dispute with United cannot be characterized as lack of diligence on her part in view of the strong federal policy favoring such reliance. She cannot be found chargeable with neglect which would bar her right to bring this action when, trusting in the good offices and promise of her government to seek resolution of her complaint, she commits that grievance to its care.

Nor would it be just to penalize Mrs. Sangster for delays as much attributable to ALPA, United and the EEOC as to her.

Though without making a pest of herself she might have done more, so might have all concerned, and to visit the entire burden of that fault on Mrs. Sangster alone would be unfair. EEOC's conciliation efforts, "regardless of the time taken," are designed to aid in effectuation of remedy. The court will not find that its procedure has in this instance prevented it. *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 778, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Cunningham v. Litton Industries, supra.*

Accordingly, the court grants partial summary judgment to Mrs. Sangster to the extent specified below, and denies all motions brought by ALPA.

## REMEDY

In considering the extent to which Mrs. Sangster is entitled to a remedy, the court is confronted with the problem of the proper weight to be attached to plaintiff's voluntary quitting of her job as a stewardess supervisor, and her failure to press the EEOC for speedy action on her complaint.

■ Clearly, it is the court's duty to render a decree which will so far as possible eliminate all the effects of the discrimination against her, responsibility for which is shared by United and ALPA. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 418–19, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). But the court's obligation is to give compensation equal to the injury caused by these parties, no more and no less. Thus, the court questions whether a remedy which includes compensation in various possible forms for the period she voluntarily was not an employee of United is needed to make her "whole."

■ In answering, it is necessary to distinguish between United's refusal to give Mrs. Sangster the job she wanted and sought, that of stewardess, and the job she did not want and quit, that of stewardess supervisor. It seems obvious that United cannot insulate itself from nor set up a defense to a claim of unlawful refusal to hire as to one job, by offering an applicant therefor a second job which she does not

want and which differs in material aspects. *See Franks v. Bowman Transportation Co., supra* at 768–69, 96 S.Ct. at 1265, 47 L.Ed. 2d at 464. Such an offer may have relevance to issues of damages or mitigation, but it will not overcome the unlawfulness of its refusal to hire.

■ On the other hand, where an applicant is found to have given up his or her effort to secure the position from which he or she was unlawfully barred, the employer will not be held to have caused injuries flowing from that unlawful act; accordingly, the applicant will obtain no remedy. *Gerstle v. Continental Airlines, Inc., supra; cf. United Air Lines v. Evans, supra.*

Mrs. Sangster, therefore, must show by a preponderance of the evidence that her voluntary departure from her supervisory job did not amount to a voluntary abandonment of her claim to the stewardess position. She also must show that any injury for which she seeks compensation was a product of United and ALPA's unlawful discrimination, and not of her own voluntary actions.

■ The court finds that she has met the first of these burdens. The stewardess position differed materially from the supervisory position she occupied. Thus, she was not obligated to accept or retain that position in lieu of the position she was unlawfully denied. In fact, her decision to quit the supervisory job was provoked by one of the most material differences between that post and the stewardess position, namely the incompatibility of her supervisory work schedule with that of her husband. As at no time did she cease to seek employment by United as a stewardess, her quitting the supervisory position did not constitute abandonment of her efforts to obtain her lawful due.

■ But as to the second of her burdens, Mrs. Sangster has made a less convincing showing. The court, of course, takes as its starting point a presumption in favor of rightful seniority relief, relief which may not be denied except on the basis of unusual facts and circumstances

that would not generally be found in Title VII cases, or for reasons which " 'if applied generally, would . . . frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.' " *Franks v. Bowman Transportation Co., supra* at 771, 779 n.41, 96 S.Ct. at 1267, 47 L.Ed.2d at 470. Ordinarily, having shown the unlawfulness of United's refusal to permit her transfer, Mrs. Sangster would be entitled to be slotted in that position in the seniority system that would have been hers had she been permitted to transfer at the time of her application on November 8, 1968. *Id.* at 765–66, 96 S.Ct. at 1265, 47 L.Ed.2d at 462.

■ However, an award of retroactive seniority is not requisite in all cases, but is subject to the court's sound equitable discretion. *Id.* at 770–71, 96 S.Ct. 1251, 1270, 47 L.Ed.2d at 469. Equitable remedies, as the Supreme Court pointed out, must be a " 'special blend of what is necessary, what is fair, and what is workable . . .' "; the court must " 'eschew rigid absolutes and look to the practical realities and necessities inescapably involved . . .' " *Id.* at 777 n.39, 96 S.Ct. at 1270, 47 L.Ed.2d at 469.

First of these practical realities is the fact that Mrs. Sangster quit United. Although in no sense can her right to recovery for denial of the stewardess position on November 8, 1968, be held contingent upon later retention of the supervisory job, it remains true that her right to the stewardess job and to full seniority contractually sprang from her possession of the supervisory position. When she gave up that post, therefore, she considerably weakened the strength and urgency of her claim by adding a second obstacle to the fact of her marriage. That this contributed to the extent of her injury seems clear, since otherwise she would have been reinstated as a stewardess on October 16, 1969, when United and ALPA concluded an agreement which would have applied to her. Further, it indicated that she may have thereby intended to abandon her claim, an impression which, so far as the evidence shows, she did

nothing to dispel. One may reasonably infer that this also contributed to the EEOC's slow handling of her charge, since it may well have believed her claim to have been dropped.

■ Secondly, Mrs. Sangster did not pursue her remedy with much vigor. She may have had a right to rely on the slow processes of the EEOC, a right which absolves her of any charge of neglect which would bar her claim from this court, but she was not entitled to sleep on that right. Even the best of procedures can sometimes go wrong, and it behooves a person who claims to be actively pressing for remedy of a grievance to periodically reassert that fact when nothing is heard from the accountable agency for lengthy periods, and to urge it to faster action. Mrs. Sangster's complacency in the face of an extraordinary passage of time is at least partly responsible for its duration.

■ But to take either of these facts as sufficient cause to reduce her remedy would be to state a rule which, " 'if applied generally, would . . . frustrate the central statutory purposes of eradicating discrimination through the economy and making persons whole for injuries suffered through past discrimination.' " *Id.* at 771, 779 n.41, 96 S.Ct. at 1267, 47 L.Ed.2d at 470.

If relief is to be limited in any significant measure in all instances where an employee quits one job after unlawfully being denied another job by the same employer, then the employee would be constrained either to contribute by his labor to an employer who has treated him unfairly and who persists in that unfair treatment, or to take less than a whole remedy for injuries suffered. Again, to reduce a remedy unless the employee consents to serve his employer during the nine years it may take, as here, to obtain that remedy, would force impossibly onerous choices on the employee and, because the employee's readiness to bring charges would be inhibited, the Act's purpose of ending economic discrimination would be frustrated.

Similarly, if a portion of the relief otherwise due is to be denied because the person aggrieved fails to seek his remedy with adequate industry, where the legally offending parties are equally culpable for that delay, and where a chief cause of the delay is reliance on proper and preferred process, then employers would obtain protection for persistence in unlawful action, and reliance on the Act would itself be found a buttress of economic discrimination.

Such rules cannot be abided. Accordingly, though it may seem bold to grant sixteen years' seniority where less than eight were served, the court concludes that nothing less will do. Therefore, as United and ALPA by their mutual opposition to Mrs. Sangster's employment as a stewardess caused her an injury for which they are liable, injury which includes, in addition to denial of that position, loss of seniority which otherwise would have accrued, the court holds that Mrs. Sangster is entitled by way of relief to reinstatement in the position of stewardess with such seniority as would have been hers on November 8, 1968, had United's discriminatory policy never been in effect, plus full seniority credit for the period since that date to the present. It is so ordered.

No just reason for yet more delay appearing, partial summary judgment with respect to fewer than all the issues shall be entered for Mrs. Sangster. Fed.R.Civ.P. 54(b). Judgment will be entered on the issues of liability and reinstatement with seniority in accordance with the order herein made, leaving for later resolution the issues of monetary damages, interest, and attorney fees.

Further, the court considers that this matter has been pending for an altogether inordinate length of time and, therefore, will entertain no application for stay of this order and judgment, but rather orders that Mrs. Sangster be reinstated with seniority forthwith. *See Coffin v. Secretary of Health, Education and Welfare,* 400 F.Supp. 953, 959 (D.D.C.1975).