**Linda E. SANGSTER, an individual, Plaintiff–Appellant,**

v.

**UNITED AIR LINES, INC., a Delaware Corporation, and Air Line Pilots Association, International, a labor organization, Defendants–Appellees.**

No. 78–1242, 78–1289.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1980.

Decided Dec. 8, 1980.

*cert. denied* 101 S.Ct. 2048

Robert W. Tollen, Chickering & Gregory, San Francisco, Cal., for Sangster.

John F. Henning, Jr., Donald D. Connors, Jr., San Francisco, Cal., Robert S. Savelson, New York City, Abner W. Sibal, Washington, D. C., for United Air Lines.

Donald D. Connors, Jr., Brobeck, Phleger, Harrison, San Francisco, Cal., Stephen B. Moldof, Cohen, Weiss & Simon, New York City, for defendants–appellees.

Before WRIGHT, GOODWIN and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

This is an employment discrimination case brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. Linda E. Sangster, a former airline stewardess, alleged that her employer, United Air Lines, Inc. (United), and her collective bargaining agent, the Air Line Pilots Association (ALPA) had discriminated against her on the basis of her sex. ALPA appeals on No. 78–1242 from the district court order granting Sangster's motion for pretrial summary judgment on the

issue of liability and ordering her reinstatement with full seniority.[1] Sangster appeals in No. 78–1289 from the subsequent judgment denying her an award of back pay and awarding attorneys' fees. We affirm the district court in all respects.

## FACTS

Sangster was hired by United on November 24, 1961 as an airline stewardess or flight attendant. She was unmarried at that time. On May 28, 1966 she was promoted to the nonflight position of stewardess supervisor. This change in status did not affect her seniority as a stewardess, which continued to accrue in accordance with the provisions of the applicable collective bargaining agreement as though she were still in active stewardess service. The transfer did not preclude a later return to her position as stewardess with full accrued seniority.

On April 9, 1968 Sangster married a United pilot. She was aware that once married United's rules would bar her from resuming her former stewardess position and that she would forfeit her stewardess seniority rights. Nevertheless, she decided to continue in her employment as a stewardess supervisor after her marriage and to await the outcome of negotiations between United and ALPA, which she hoped would soon terminate the no–marriage policy.

United and ALPA did reach such an agreement on November 7, 1968. The agreement was only partially retroactive, however, and did not protect married stewardess supervisors who wished to transfer back to a flight position. When Sangster applied for transfer to stewardess status on November 8, 1968, United denied her application. The next day she filed a formal complaint under United's internal grievance procedure, and on February 6, 1969, she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Her grievance complaint was denied by United on June 4, 1969. On June 16th Sangster quit her employment with United.

On March 8, 1972 the EEOC found reasonable cause to believe that Sangster's charge of discrimination was well–founded. On October 12, 1976 the EEOC informed her that the dispute could not be reconciled and that she had a right to sue. On November 1, 1976 Sangster filed her complaint in district court seeking reinstatement with full seniority, back pay and attorneys' fees.

The court granted Sangster's motion for pretrial summary judgment on the issue of liability and ordered Sangster reinstated with full seniority.

A trial was held on the issues of back pay and attorneys' fees. At the trial, Sangster testified as to her efforts to seek alternative employment. She had remained unemployed for the eight years between the day she voluntarily quit her job and the time United was ordered to restore her to her position as stewardess with full seniority. She admitted that she did not seek work with another airline after leaving United, either as a stewardess or in a supervisory or other capacity. Her efforts at obtaining other positions were minimal.[2] Sangster

1. The district court issued a written opinion reported at *Sangster v. United Air Lines, Inc.*, 438 F.Supp. 1221 (N.D.Cal.1977).

2. As summarized by the court, the evidence showed:

The plaintiff has testified that, with reference to the mitigation of damages in this case, which is the central and crucial issue, the plaintiff has testified that she reviewed classified ads for suitable jobs. However, there is no evidence that she made any calls with reference to her perusal of the classified ad section and we are talking of a period of almost 8 years from July 1969 to May 1977. Also that she applied as a cocktail waitress or restaurant hostess; the great majority of those, about 4 applications, made after she consulted her lawyer in December 1975, and only 2 before that time.

She inquired by telephone only of 4 travel agencies regarding employment. She did not apply to other airlines and she did not register at any employment agency for work or with the state nor did she apply for benefits, all of this during the said 8–year period. (RT: 127–28)

The record bears out this summary. *See* RT: 54–67, 124.

testified that the stewardess position at United with her seniority intact was a unique position, enabling her to adapt her schedule to her pilot–husband's while being assigned to the same geographic area.

The district court found that Sangster was not interested in any other position during her eight–year period of unemployment and that she had not exercised reasonable diligence in obtaining substantially equivalent employment. Concluding that she had not met her obligation to mitigate her damages, and therefore was not entitled to compensation for the period of her unemployment, the court denied Sangster's request for back pay. The court awarded attorneys' fees against the defendants of $5,537.00, an amount substantially below the requested sum.

### ALPA'S APPEAL

 ALPA contends that Sangster failed to file her charge of employment discrimination with the EEOC in a timely fashion. We find no merit in ALPA's contention that the 90–day filing period commenced on the date of Sangster's marriage. In light of the remedial policies behind Title VII, we refuse to give the strained interpretation urged by ALPA as to when Sangster's right of action accrued and thus to deny her redress. *See Mahroom v. Hook*, 563 F.2d 1369, 1375 (9th Cir. 1977), *cert. denied*, 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402 (1978). It was not until Sangster attempted to transfer to a stewardess position on November 8, 1968 and felt the impact of the discriminatory transfer rule that the filing time began to run. Therefore, Sangster's charge filed on February 6, 1969 was timely filed.[3]

### SANGSTER'S APPEAL

#### A. Back Pay

 An award of back pay in employment discrimination cases is one of the

weapons in a court's arsenal to effectuate the dual purposes of Title VII: (1) to end discriminatory employment practices; and (2) to make employees whole for injuries suffered on account of unlawful employment discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 2371–2372, 45 L.Ed.2d 280 (1975). A finding of unlawful discrimination requires an award of back pay unless reasons exist "which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Kaplan v. International Alliance of Theatrical Stage Employees*, 525 F.2d 1354, 1363 (9th Cir. 1975) (quoting *Albemarle*, 422 U.S. at 421, 95 S.Ct. at 2373). Title VII's remedial provisions are intended to give the courts wide discretion in exercising their equitable powers to fashion the most complete relief possible, requiring that persons aggrieved by discriminatory employment practices "be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination." *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 764, 96 S.Ct. 1251, 1264, 47 L.Ed.2d 444 (1976). The discretionary decision of the trial court regarding an award of back pay is reversible only for an abuse of the court's discretion. *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978).

 As a broad proposition, injured parties are expected to mitigate the damage they suffer. This notion is expressed in Title VII in the following language: "Interim earnings or *amounts earnable with reasonable diligence* by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. Section 2000e–5(g) (emphasis added).

---

**3.** ALPA also contends that Sangster's claim was barred by the applicable state statute of limitations. This argument must fail. *See Kirk v. Rockwell Int'l Corp.*, 578 F.2d 814, 819 (9th Cir. 1978). We also find no grounds for applying the equitable doctrine of laches to bar Sangster's claim. The considerable delay in filing her claim in district court was not an

inexcusable lack of diligence in light of the facts that the EEOC did not inform Sangster of her right to sue and that she did not learn until some time in 1975 that she could sue without awaiting a final resolution by the EEOC. *Cooper v. Bell*, 628 F.2d 1208 at 1211 (9th Cir. 1980).

"The backpay provision [of Title VII] was expressly modeled on the backpay provision of the National Labor Relations Act." *Albemarle Paper Co.*, 422 U.S. at 419, 95 S.Ct. at 2372. Under the NLRA, courts have long held that back pay is not to be awarded when the evidence shows a willful loss of earnings. *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 198, 61 S.Ct. 845, 854, 85 L.Ed. 1271 (1941). Developed from this general concept, the more specific acts which constitute such willful conduct are: failure to remain in the labor market, refusal to accept substantially equivalent employment, failure diligently to search for alternative work, or voluntarily quitting alternative employment without good reason. *NLRB v. Mastro Plastics Corp.*, 354 F.2d 170, 174 n.3 (2nd Cir. 1965), *cert. denied*, 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966).

■■■ United and ALPA had the burden of showing that Sangster could have mitigated her damages. *Kaplan v. International Alliance of Theatrical Stage Employees*, 525 F.2d at 1363. Sangster claims that United and ALPA failed to establish that there was substantially equivalent work available which, in the exercise of reasonable diligence, she could have obtained. *See Sias v. City Demonstration Agency*, 588 F.2d at 696. We disagree. Moreover, she admitted that she knew of an in–flight supervisory position that had been available since 1970 for at least the last few years of her unemployment and that other United employees on similar circumstances had obtained jobs as stewardesses. Perhaps most important is Sangster's admission that she never even attempted to procure a job as a stewardess, the work she considered preferable to her position as stewardess supervisor. The evidence, from whatever sources, was more than sufficient to satisfy appellees' burden of showing that substantially equivalent work was available to Sangster.

Sangster's reliance on cases that hold that a plaintiff is not required to seek employment that is outside her area of residence, distasteful, essentially different, or inferior is misplaced. Apparently, her main reason for preferring the stewardess position to that of stewardess supervisor was that she could tailor her schedule to that of her pilot–husband. Certainly United was unjustified in denying her that opportunity solely on the basis of her sex and marital status. Nonetheless, Sangster was not entitled to remain idle for eight years after quitting substantially equivalent employment even if her right to seek employment with a different employer is given full recognition. We conclude that Sangster did not meet her duty to mitigate her damages, and that denial of back pay under the circumstances would not frustrate Title VII's remedial purposes. *See DeLorean Cadillac, Inc. v. NLRB*, 614 F.2d 554, 555 (6th Cir. 1980) (finding of reasonable diligence unsupported by record as a whole where based on uncorroborated testimony by discriminatee of his efforts to secure a job). *Cf. Inda v. United Air Lines, Inc.*, 565 F.2d 554 (9th Cir. 1977), *cert. denied*, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978) (reasonable diligence on the part of two stewardesses, each unemployed for less than nine months, shown by credible testimony); *Sprogis v. United Air Lines, Inc.*, 517 F.2d 387 (7th Cir. 1975) (reasonable diligence after discriminatory discharge shown on the part of married stewardess by at least one formal application for employment and the procurement of a temporary two–month job during a two–year period of unemployment).

### B. *Attorneys' Fees*

■■■ An award of attorneys' fees in a Title VII suit is within the broad discretion of the trial court and should be proportionate to the extent to which the plaintiff prevails in the suit. *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002, 1008 (9th Cir. 1972). The trial judge is in the best position to evaluate the complexity of the case as well as other relevant factors. We affirm the award of attorneys' fees in the amount set by the trial court, finding no abuse of discretion.

AFFIRMED.