**Carlyle S. CLINE, Appellee,**

v.

**ROADWAY EXPRESS, INC., Appellant.**

**No. 81-1833.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1982.

Decided Sept. 16, 1982.

---

**6.** See fn. 5 *supra*.

Harry A. Rissetto, Washington, D. C. (Thomas E. Reinert, Jr., Morgan, Lewis & Bockius, William S. McLean, McLean, Stacy, Henry & McLean, Lumberton, N. C., on brief), for appellant.

I. Murchison Biggs, Lumberton, N. C. (I. Murchison Biggs, P. A., Lumberton, N. C., on brief), for appellee.

Before WINTER, Chief Judge, and PHILLIPS and SPROUSE, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Roadway Express has appealed the district court's judgment, following bench trial, awarding reinstatement with back pay and interest to Carlyle Cline on the basis of factual findings that Roadway discharged Cline because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, *et seq.* We affirm the judgment in all respects save the award of back pay; we remand that portion with instructions for modification.

I

Cline, who was 42 at the time of his discharge in 1976, had been employed by Roadway since 1967 and had worked as a dock foreman at its Lumberton, North Carolina, terminal since 1972. During his employment he had been given regular promotions and merit pay increases. According to a contemporaneous entry in his personnel file, Cline's June 1975 merit increase "place[d] [him] into the mid-range of salaries in his classification!" and was given "in consideration of time of service and recently added extra duties." Earlier evaluations indicated he "continues to do a fine job" and that he "gets along well with co-workers" and "supervises men and accepts responsibility well" but was "weak in carrying out instructions and is sloppy in detail

work" and "seems to have lack of interest in work" and "has some trouble handling large crews."

In 1975, R. W. Haus became vice-president for the southern division of Roadway Express and soon determined that the division needed to upgrade the quality of its personnel. To implement this policy, Haus directed district and terminal managers to "look at" employees who had been with the company for five years without being promoted or were unwilling to move to see if they should be replaced with higher quality employees, preferably college graduates. District and terminal managers were informed of the upgrading policy at several meetings held in 1976. Haus left the implementation of the policy to the managers, since they were familiar with the employees, and did not tell them that they were not to consider age when determining promotability.

Cline's terminal manager and immediate supervisor, Gary Alley, informed Cline of the new policy. Cline offered to transfer to Florida, where a new Roadway terminal needed experienced men, but Roadway never acted on this offer. In December 1976, after consulting with his district manager, Frank Creteman, Alley discharged Cline because, according to Alley, he was "not promotable." [1] Cline's employment status form in his personnel file recited the reason for his discharge as "poor work performance." Alley elaborated on the employment status form that

> Mr. Cline has a negative attitude. He will lose his temper quickly if things are not going smoothly with the day's operations. He is unable to handle new procedures without close supervision. He has no drive to keep up with company changes. Defensive when ask [sic] questions or when suggestions are made on how he has handled his job. I have found men working on overtime while other men are working and will not even make

45 hours just so he can close the terminal early. Problems with customers is [sic] not handled in a business like manner. He is unable to get along with drivers and other employees. Mr. Cline has been working in the afternoon shift due to his inability to handle the paperwork and unable [sic] to coordinate the drivers and freight delivery of the morning shift.

Roadway immediately replaced Cline with a man in his early 30's and this suit followed.

The district court determined that Roadway had violated Cline's statutory rights under the Act by discharging him "because of his age," and awarded reinstatement with back pay, pre- and post-judgment interest, and attorney fees. On this appeal, Roadway challenges both the determination of liability and the award of relief.

On the liability issue, the challenge is to the court's critical findings of fact; to the legal standards by which proof of discriminatory discharge was assessed; and to the admission of certain evidence. On the remedial issue, the challenge is to the court's failure to apply applicable mitigation principles; to its award of pre-judgment interest; to its decree of reinstatement; and to its refusal to off-set against the backpay award the value of a stock bonus given Cline in connection with his discharge. We take the liability issue first.

I

A

Roadway's basic challenge is to the district court's mode of assessment of the proof of age discrimination in Cline's discharge. The contention is that the court wrongly assessed Roadway's evidence that unsatisfactory performance was the actual reason for Cline's discharge and, in consequence, erroneously rejected it. The evidence was offered, Roadway urges, simply to dispel Cline's prima facie proof under the *McDonnell Douglas* [2] Title VII proof scheme

---

1. Cline was discharged some three weeks before his retirement pension was to vest. Roadway later granted Cline his pension.

2. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

as adapted to ADEA litigation, whereas the court assessed it as if it were offered to establish the ADEA statutory affirmative defense of "good cause" provided by 29 U.S.C. § 623(f)(3). Rightly assessed, the argument runs, the burden of proof to dispel the presumption was easily carried, being only the relatively light production burden defined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Wrongly understood and applied however as a burden of persuasion to establish an affirmative defense, the burden was wrongly adjudged not to have been carried.

This argument completely misconceives both what the district court in fact did here, and, more fundamentally, the appropriate legal basis for assessing the evidence in this case. Rightly analyzed, the court's assessment of the evidence was within the proper legal framework and its critical findings of fact on the dispositive issue are not reversible under the standard of review we apply.

The dispositive[3] liability issue was the narrow motivational one central to any ADEA claim: whether Cline "was discharged 'because of his age,'" *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1017 (1st Cir. 1979), or more precisely, whether "age was a determining factor" in the sense that " 'but for' his employer's motive to discriminate against him because of his age, he would not have [suffered the unfavorable action]," *Spagnuola v. Whirlpool Corp.*, 641 F.2d 1109, 1112 (4th Cir. 1981). On this, issue was clearly joined at trial.

■ Though, as we have recently pointed out, *see Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230 (4th Cir. 1982), the *McDonnell Douglas* proof scheme with its first stage presumption favoring claimants may be employed in resolving this motivational issue,

it need not be, and in some cases its use would indeed be improper. That age was a determining factor in a challenged employment decision "may of course be proved under ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue, ... without resort to any special judicially created presumptions or inferences related to the evidence." *Id.*, at 239; *see also Loeb*, 600 F.2d at 1018.

■ Such unaided proof may consist of direct evidence that the employer announced, or admitted, or otherwise unmistakably indicated that age was a determining factor, *see, e.g., Spagnuola*, 641 F.2d at 1113, or of circumstantial evidence, including but not limited to proof of the claimant's general qualifications,[4] from which the inference of age discrimination may rationally be drawn independently of any presumption. *See Lovelace*, at 242–243. When this kind of direct or circumstantial proof is adduced, there is no need to employ the *McDonnell Douglas* presumption-based proof scheme either to determine its sufficiency to raise issues for the trier of fact or for resolution of the issue by that trier. *See Spagnuola*, 641 F.2d at 1113. Assuming that the evidence supporting the inference of discrimination is sufficient, assessed under ordinary standards, to survive a motion to dismiss, Fed.R.Civ.P. 50, a bench trial judge properly proceeds directly to consider the evidence pro and con bearing upon the motivational issue without resort to any judicially created presumption. To the extent the defendant's evidence tends to suggest any other legitimate motivation for the challenged action, it is simply evidence offered, as in any context, to rebut proof of an essential element of any claim. As such it is properly assessed neither as evidence offered to "dispel" a judicial presumption,

---

3. The other essential elements of the ADEA claim—that Cline was in the protected age group and that he suffered an unfavorable employment action by an employer subject to the ADEA, *see Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 (1st Cir. 1979)—were not in dispute.

4. That a claimant was "qualified" for the position in question is one of the predicates for the

*McDonnell Douglas* presumption as applied in Title VII litigation, and as adapted for application in ADEA cases. *See, e.g., Smith v. University of North Carolina*, 632 F.2d 316, 332 (4th Cir. 1980). It obviously has relevance to the motivational issue independently of the presumption's operation. *See Loeb*, 600 F.2d at 1017 & n.18.

nor to "prove" an affirmative defense, but simply for its effect in rebutting the claimant's proof on the issue.

Here, this was the pattern of proof as developed in both parties' evidence, and the district court properly so saw and assessed it. Though Roadway has sought on this appeal to force analysis into the "three-stage minuet" of the *McDonnell Douglas* proof scheme, we decline to review the district court's fact findings on that constricted basis.[5]

■ As the district court rightly saw the case, it was a simple one involving attempted proof by the plaintiff through circumstantial evidence that age was a determining factor in his discharge, countered by the defendant's attempt, through proof of sufficient other causes for the discharge, to rebut the plaintiff's proof. The record reveals that the court correctly saw this as the dispositive issue, that it carefully weighed the evidence on it pro and con—assessing credibility, considering the inferential force of various items of evidence—and on that basis then determined the issue in plaintiff's favor. As the court put it in its critical ultimate finding of fact: "Plaintiff was discharged from his employment with defendant because of his age."

■ On appeal, the issue for us is equally simple. It is whether this ultimate and dispositive finding of fact is supported, under the standard of review we apply, by the evidence of record. That standard, applicable to an ultimate finding of motivation as to any other, *see Pullman-Standard v. Swint,* —— U.S. ——, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (discriminatory intent under Title VII), is the clearly erroneous standard of Fed.R.Civ.P. 52(a). Under that standard, without regard to how we might independently assess the credibility and inferential force of the evidence supporting and opposing the finding under review, we may not disturb it unless on a review of the entire record we are "left with the definite

and firm conviction that a mistake has been committed," *Commissioner v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960), *quoting United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948). Applying that standard we cannot say of this finding that it is clearly erroneous.

In subsidiary findings of fact amply supported by the record the district court plainly charted the path by which the inference of age discrimination embodied in the dispositive ultimate fact finding was reached. Looking first to the evidence supporting Cline's claim, the court found that "[f]rom the beginning of his employment with defendant until [his discharge], the plaintiff received several pay raises and in conjunction therewith commendations on his performance from superiors"; that Cline "performed his job in a workmanlike manner up until his discharge . . ."; and that "at the time of his discharge, plaintiff was healthy and otherwise qualified for the position which he held." Some of these general qualification findings are practically compelled by undisputed evidence, including the documentary evidence in Roadway's personnel files; all are adequately supported by evidence of record.

Assessing the evidence suggestive of a general policy under which Cline was discharged, the court made even more critical findings. In summary, they were that upon assuming his duties as vice-president in 1975, Haus "implemented new policies designed to upgrade the personnel with higher quality employees, preferably college graduates"; that "specifically [Haus] directed that if an employee had been with the company for five years without being promoted or would not move, he would be a candidate to be looked at"; that Haus "left it up to the terminal manager and district managers to implement his new policy," and that they "were informed [of this policy] at district or area meetings, at least

---

**5.** That Cline, defending his judgment on this appeal, has attempted directly to counter Roadway's analysis within the *McDonnell Douglas* framework as well as pressing for affirmance on the district court's more direct analysis is understandable, and obviously involves no concession of the correctness of Roadway's theory.

three of which were held in the Spring, Summer and Fall of 1976"; that "the terminal managers and district managers were not instructed that they were not to use age as a criteria [sic] in implementing the new policy"; and that "at least some terminal managers interpreted the new policy to require the discharge of older men and hire younger college graduates in their place." Some of these findings of basic historical fact are based upon party admissions or otherwise undisputed evidence; none is without support in credible evidence of record.

Concentrating upon the specific decision to discharge Cline, the court found that he "was discharged by [his terminal manager] who advised plaintiff that he was being discharged because he was not promotable"; that "prior thereto [the terminal manager] had never discharged anyone"; and that "following the discharge of plaintiff, the position formerly occupied by him was immediately filled by another." Again, these findings of basic historical fact are soundly supported by evidence of record.

Turning from Cline's evidence suggesting that age was a determining factor in his discharge to Roadway's rebutting evidence designed to show that Cline's poor performance was alone the reason, the district court carefully and thoroughly analyzed the latter and by specific findings rejected it, essentially by rejecting its credibility for the purpose offered. The court directly addressed Roadway's evidence, in the form of its own employment status form indicating, after the fact, that Cline's discharge was "for poor work performance." The court found: "There are no records in plaintiff's personnel file indicating any prior complaints of the type or nature reflected in [Cline's employment status form] at the time of plaintiff's discharge." [6]

Addressing more particularized charges in this status form—repeated in oral testimony by the terminal manager—that Cline engaged in profanity and temper outbursts on the job, the court flatly discounted these as credible explanations for the discharge. The terminal manager's testimony was characterized by the court, during the course of a general summary of the evidence, as "not very credible," and the witness himself as "very weak when it came to giving specifics." The rough and tumble context of the loading dock workplace; the failure of fellow-worker witnesses to substantiate Roadway's assessment of the seriousness of these personal characteristics; and the lack of any evidence of adverse effect upon Roadway's customers were all specifically noted by the court.

The court's final assessment of this rebuttal evidence was embodied in another finding of ultimate fact: "[a]t the time of plaintiff's discharge ... defendant did not have good cause for said discharge." [7]

---

**6.** This finding might be subject to technical challenge on the basis that there were some negative references in earlier generally laudatory entries in Cline's file. Its essence, however, that not until he had been discharged were there any entries suggesting that his performance was threatening to his job security, is indisputable on the record.

**7.** One of Roadway's main attacks upon the district court's assessment of the evidence focusses upon this finding. Seizing upon its "good cause" reference, Roadway says that it reveals that the court erroneously applied its own "objective standards of appropriate personnel performance" rather than inquiring merely into Roadway's subjective good faith in exercising its business judgment that Cline's performance was unsatisfactory. In doing so, Roadway contends, the court improperly acted as a "super board of directors reviewing bona

fide management decisions, a procedure Congress clearly did not intend by passage of this Act," *Bishop v. Jelleff Assoc.*, 398 F.Supp. 579, 593 (D.D.C.1974).

We must of course agree with Roadway's unassailable proposition that an employer may not properly be found in violation of the ADEA simply because it exercised poor business judgment, gauged objectively, in treating unfavorably an employee within the protected age group on grounds other than age. *See Lovelace*, at 244; *Loeb*, 600 F.2d at 1012 n.6. But this is not what the district court was doing in making this challenged finding. It was doing something even more drastic: rejecting the proffered reason on the basis that it was not credible rather than on the basis that though credible it was unsound as a matter of business judgment. In doing this the court was acting quite properly as a court and not impermissibly as a "super board of directors" or as an arbitra-

Resting, as does this finding, largely upon a credibility determination which is not on its face or in light of the whole record so irrational that we must reject it, we may not do so under the command of Fed.R. Civ.P. 52(a) that in conducting clear error review we must give "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses."

In summary, the record shows that in assessing the evidence the district court determined that Roadway's terminal manager Alley, acting within his delegated authority and on the assumption—whether accurate or not—that he was carrying out company policy, made and carried out a decision to discharge Cline, and that in reaching this decision, Cline's age was a determining factor in the sense that but for his age he would not have·been discharged, see Spagnuola, 641 F.2d at 1122. This determination, embodied in the ultimate fact findings we have analyzed, is concededly dependent upon drawing critical inferences favorable to Cline from circumstantial evidence and upon rejecting, essentially for lack of credibility, direct evidence to the contrary. The necessary inferences are that Alley acted upon his understanding that he should fire Cline if as an older worker—one with more than five years service—he was not "promotable," in order to replace him with a younger person who was potentially "promotable," and that he did in fact discharge him on that understanding and for that reason. These inferences are fairly supportable on the record, though they are obviously not the only possible ones. To draw them, as did the district court, was not clearly erroneous. Neither was it clearly erroneous for the court to reject, essentially for lack of credibility, Roadway's rebuttal evidence of a reason for the discharge in which age was not a determining factor. In combination, and in conjunction with other undisputed facts of record, these findings support the court's conclusion that

Cline's discharge violated his rights under the ADEA.

### B

■ We have considered and reject Roadway's challenge on hearsay grounds to the admission of the testimony of witnesses Quakenbush and Kincaid, Roadway employees. These witnesses were allowed to testify over objection that, at several formal and informal meetings of terminal managers, certain of those managers, some specifically identified, indicated their understanding that Roadway's new policy was one designed to replace older workers with younger, better qualified ones. We agree with the district court's ruling that the evidence was admissible under Fed.R.Evid. 801(d)(2)(D), as admission of agents "concerning a matter" within the scope of their employment.

### III

The district court awarded Cline $84,782.56 in back pay and $13,918.07 in prejudgment interest, and ordered reinstatement and contributions to the pension fund to ensure that Cline would receive benefits equivalent to those he would have received but for his illegal discharge.

### A

Roadway argues that Cline failed to mitigate his damages by not seeking work in the trucking industry after his discharge, and that his damage award is therefore excessive. We disagree.

■ Plaintiffs in ADEA cases have a duty to mitigate their damages by seeking other available employment with reasonable diligence. See Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1114 (4th Cir. 1981). Here, however, Roadway has not carried its burden of showing that Cline failed to miti-

tor, another suggestion advanced by Roadway. When the court found that the "cause" proferred by Roadway was not a "good" one, it is plain in total context that it meant that the cause simply would not wash as the real expla-

nation for Cline's discharge. We review this then as a credibility determination of fact, and not as a judicially imposed standard of business judgment.

gate damages.[8]  After his discharge in December 1976, Cline made weekly visits to the Employment Security Commission to discuss job opportunities and then obtained a realtor's license and went into the real estate business.  Cline earned substantially less in his new occupation than he had previously, but Roadway has not shown that his decision to turn to real estate, after being illegally fired from his job in the trucking industry, was not bona fide.  In determining the back-pay award, the district court properly subtracted Cline's actual real estate earnings from the salary he would have received at Roadway,[9] and we see no error in its calculations.

### B

■ Roadway challenges the award of prejudgment interest to Cline.  We have held that prejudgment interest is not recoverable when an ADEA plaintiff receives liquidated damages for a willful violation of the Act,[10] Spagnuolo, 641 F.2d at 1114, but have not specifically ruled whether prejudgment interest is appropriate in the absence of a liquidated damage recovery, the situation here.

Remedies under the ADEA are based on those of the Fair Labor Standards Act, see 29 U.S.C. § 626(b).  In affirming refusals to award prejudgment interest under the FLSA, we have indicated that the district court has discretion, based on the equities involved, in awarding or denying interest.  See Clifton D. Mayhew, Inc. v. Wirtz, 413 F.2d 658, 663 (4th Cir. 1969).  See also Marshall v. Board of Education, 470 F.Supp. 517 (D.Md.1979) (awarding prejudgment interest), aff'd mem. 618 F.2d 101 (4th Cir. 1980).

Prejudgment interest is necessary, in the absence of liquidated damages, to make the individual discriminatee whole.  Cf. Masters v. Maryland Management Co., 493 F.2d 1329, 1334 (4th Cir. 1974) (district court correctly refused to award prejudgment interest when liquidated damages more than adequately compensated victim).

We think the broad equitable powers conferred by 29 U.S.C. § 626(b) include the power to award prejudgment interest in an appropriate case.  Here, the court determined, in findings upheld on this appeal, that company supervisors, pursuant to their understanding of company policy, intentionally discharged an employee because of his age and then ascribed untenable reasons for the discharge in the employer's personnel files.  In such a situation, the district court did not abuse its discretion in awarding prejudgment interest.

### C

■ Roadway contends that the district court abused its discretion in ordering reinstatement, citing Cline's incompatibility with Roadway personnel and his long absence from the trucking industry.  The district court considered these objections and rejected them on eminently practical grounds.  When the difficulties of fashioning an appropriate monetary award if reinstatement were not ordered are taken into account, see Loeb, 600 F.2d at 1022–23, we are satisfied that the district court did not abuse the broad equitable powers conferred by 29 U.S.C. § 626(b) in opting for reinstatement as an appropriate remedy here.

---

**8.**  The burden of showing failure to mitigate is on the employer.  See Sangster v. United Air Lines, Inc., 633 F.2d 864 (9th Cir. 1980); Sias v. City Demonstration Agency, 588 F.2d 692, 696 (9th Cir. 1978).

**9.**  Roadway argues that Cline's gain of $3,262 from a sale of land he owned should have been deducted from his back-pay award because Cline was in the real estate business.  We think the capital gain is distinct from the amount Cline received on real estate commissions, with the latter (less expenses) being the proper measure of alternate earnings.

**10.**  The district court concluded that no willful violation existed, hence no liquidated damages were due, see 29 U.S.C. § 626(b), because the acts were not done pursuant to company policy but rather pursuant to the interpretation of company policy by Cline's immediate superiors.  Cline does not appeal this determination so we do not review it.  But cf. Spagnuolo, 641 F.2d at 1113–14 (employer acts willfully when knows or has reason to know conduct governed by ADEA).

## D

Finally, Roadway invokes the general principle that ADEA back-pay awards should reflect only net losses suffered to contend that the value of company stock received by Cline upon his discharge should have been set off against the back-pay award. Under Roadway's stock bonus plan Cline was entitled to receive the full amount of stock credited to his account upon his normal retirement or his involuntary discharge, but only a reduced amount upon his voluntary separation before retirement. Roadway contends that when received upon involuntary discharge, it operated as severance pay which, unlike collateral benefits from outside sources, should properly be offset in making a back-pay award. The fact is, however, that had Cline continued his employment until voluntary retirement, he would have received both his wages and the stock benefit. The severance pay analogy therefore does not fit, even assuming it would control decision. The problem is more complicated here, and the equities not reducible to so simple an either/or solution as the parties—urging conflicting results of course—contend for, and as the district court chose.

The ordering equitable principle is that a compensatory back-pay award should only make the wrongly discharged employee monetarily whole under his employment contract; it should not provide a windfall. Here, whether allowing or disallowing the offset will do the one or the other is contingent upon future events that lie essentially within Cline's control. If offset is made; and if Cline accepts reinstatement;[11] and if he then remains employed through to normal retirement, or if he is again involuntarily separated, he will not in the end have been made whole. On the other hand, if offset is not made and Cline either does not accept reinstatement or, having accepted it, then voluntarily sepa-rates before normal retirement, he will have received a windfall. The district court's decree, not allowing the offset, exposes to the windfall possibility, entirely at Cline's option. We conclude that, under the circumstances, this abused the district court's discretion. An unconditional allowance would expose to the opposite possibility, an equally unacceptable solution.

We think a more equitable solution that serves the ultimate principle while accommodating the contingencies is available, and to this end we remand for the limited purpose of modifying the back pay portion of the decree in the following way.

The value of the stock upon its transfer to Cline should be ascertained (if need be, by an evidentiary hearing) and that value should be offset against the amount of back pay adjudged to be due Cline. The court's decree should then be further amended to provide that if, within a specific limited time, Cline accepts the reinstatement ordered and thereafter becomes entitled to benefits under Roadway's stock bonus plan (whether by voluntary or involuntary separation, normal retirement, or otherwise) the defendant shall then either transfer to Cline or his appropriate representative the stock to which he is entitled under the plan or pay over its fair market value as of the date of his entitlement. If Cline declines to accept reinstatement, this should be treated as a voluntary separation as of the date of declination, and Cline's entitlement should be computed on that basis.[12]

## IV

That portion of the judgment awarding back pay is vacated and the case remanded for its modification in accordance with this opinion. In all other respects the judgment is affirmed.

AFFIRMED IN PART; VACATED AND REMANDED IN PART WITH INSTRUCTIONS.

---

11. The district court's judgment, including that part ordering reinstatement, was stayed by the district court pending this appeal.

12. We leave to the district court both the exact form of the modified decree and the power to adapt the terms here outlined to any circumstances not apparent from the record or that have supervened during this appeal if and as needed to accomplish the equitable purposes of this limited remand.