176 Wis.2d 961 (1993)
501 N.W.2d 38
Theresa M. DUELLO, Plaintiff-Appellant,
v.
BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Defendant-Respondent-Petitioner.
No. 91-1047.
Supreme Court of Wisconsin.
Oral argument March 2, 1993.
Decided June 17, 1993.
*962 For the defendant-respondent-petitioner the cause was argued by John J. Glinski, assistant attorney general, with whom on the briefs was James E. Doyle, attorney general.
For the plaintiff-appellant there was a brief by Lester A. Pines and Cullen, Weston, Pines & Bach, Madison and oral argument by Lester A. Pines.
WILLIAM A. BABLITCH, J.
Title VII of the Civil Rights Act of 1964 § 706(k) authorizes a court, in its discretion, to award a reasonable attorney's fee to the prevailing party in "any action or proceeding" under *963 Title VII. Theresa Duello (Duello) was represented by counsel in proceedings before the University of Wisconsin-Madison's Committee on Faculty Rights and Responsibilities (CFRR) challenging the University of Wisconsin-Madison Medical School's Department of Anatomy's (Anatomy Department's) decision not to renew her employment contract. The dispute was ultimately settled, and Duello sought to recover the attorney's fees she incurred in the CFRR proceedings. The sole issue on this review is whether the internal review proceedings before the CFRR were "proceedings" within the meaning of § 706(k) of Title VII such that the circuit court could have allowed Duello to recover the attorney's fees which she incurred in the CFRR administrative proceedings. We conclude that Title VII allows the recovery of reasonable attorney's fees only for those state administrative proceedings that Title VII requires a claimant to invoke prior to bringing a Title VII action in court. Because the internal review proceedings before the CFRR were an optional review process which Duello was not required to invoke pursuant to Title VII, she is not entitled to attorney's fees.
The circuit court set forth a detailed and thorough recitation of the relevant facts, and we draw from its recitation in setting forth the undisputed facts below.
In the fall of 1982, Duello was hired for an initial three-year appointment to work as an assistant professor in the Anatomy Department of the University of Wisconsin Medical School. She received two one-year extensions of her contract. On July 1, 1986, one year prior to the year that she would have been considered for tenure, the Anatomy Department voted not to renew her contract.
On August 5, 1986, Duello filed a complaint with the University's office of Affirmative Action and Compliance *964 (OAAC) alleging that the Anatomy Department's nonrenewal decision was discrimination based on sex. Duello asserts that prior to disclosing the results of its investigation, the OAAC informed her that she could have a full-time equivalent position in any other department if she would forego her right to the OAAC report. Duello declined.
In January 1987, the OAAC issued its report which concluded that the Department of Anatomy had subjected Duello to an "offensive and hostile environment." Circuit Court Decision at p. 1 (quoting Report of the Office of Affirmative Action and Compliance, p. 10). According to Duello, two weeks after the OAAC issued its report, the Acting Vice Chancellor of the University informed Duello that he would help her move to another department provided that she sign a statement that a transfer to another department constituted a total resolution of the sexual discrimination complaint. Again, Duello declined. Sometime in January 1987, Duello retained counsel.
After receiving the OAAC's report, Duello asked the Anatomy Department to reconsider its nonrenewal decision. In February, 1987, the Anatomy Department informed Duello that it would not reconsider its decision. Subsequently, on April 13, 1987, pursuant to Wisconsin Administrative Code sec. UWS 3.08,[1] Duello filed *965 a petition with the CFRR requesting a review of the nonrenewal decision to determine whether the Anatomy Department had based its decision on factors proscribed by nondiscrimination laws.
On April 24, 1987, Duello filed a complaint with the Equal Rights Division of the Department of Industry, Labor and Human Relations (DILHR) and the federal Equal Employment Opportunities Commission (EEOC) alleging that the Anatomy Department had discriminated against her on the basis of sex. Pursuant to sec. 111.375(2), Stats.,[2] the Equal Rights Division referred *966 Duello's complaint to the state Personnel Commission (PC). The PC placed Duello's complaint on "hold" pending the completion of her appeal to the CFRR.
The CFRR issued its final report and recommendations on October 27, 1988. The CFRR summarized its conclusions as follows:
We have concluded that the challenged nonretention decision did not violate any standard formal norms of procedure or due process, and we have discovered no evidence that it resulted from sexual discrimination. Nevertheless, it failed to meet the standards of fairness that the University of Wisconsin is committed to uphold. CFRR has found no actionable or malicious misconduct on the part of any faculty member or administrator, but there is nonetheless plenty of culpability to be shared. Lack of colleague sympathy and assistance, unfortunate and insensitive statements susceptible to misinterpretation, an investigation by AAO which distressed and angered the Anatomy Department Executive Committee and Dr. Duello, and apparently insufficient oversight by the Medical School Administration, conjoined with a tense and unfriendly work environment, prevented a fair evaluation of Dr. Duello's accomplishments and likely future performance. Her own heightened sensitivity did nothing to ameliorate these conditions, and probably only exacerbated them. Under the circumstances, CFRR believes that Dr. Duello is entitled to another chance to be judged on her merits as a scholar, the same opportunity to succeed that is routinely extended to all assistant professors. (footnote omitted). Decision and Order of the Personnel Commission *967 at 5 (quoting the Committee on Faculty Rights and Responsibilities Report at p. 21).
The CFRR recommended that Duello be offered a new contract and suggested other changes in her status that would give her the opportunity to gain tenure. The CFRR also recommended that the University reimburse Duello for 50 percent of her legal expenses.
On February 10, 1989, the Chancellor of the University of Wisconsin, whose decision on nonrenewal appeals is final, rendered a decision on Duello's appeal. The Chancellor adopted most of the CFRR's recommendations but reserved judgment on the issue of attorney's fees. The Chancellor did not come to any conclusion regarding the existence of gender discrimination in the Anatomy Department, noting:
Since I find that CFRR and each of the parties have a tenable reason for supporting the recommended remedies, it is not necessary for me to resolve their disagreements concerning gender discrimination and on what conditions prevailed within the Anatomy Department. Circuit Court Decision at p. 3 (quoting Chancellor's Decision of February 10, 1989, p. 2, footnote 2).
On July 10, 1989, the Chancellor issued a decision denying Duello's request for attorney's fees.
As a result of negotiations between Duello and the University of Wisconsin, Duello accepted the University's offer of relief which provided her with a full-time probationary faculty appointment as assistant professor in the Department of Obstetrics and Gynecology. However, Duello reserved her right to pursue her attorney's fees and signed a statement to that effect on August 9, 1989:

*968 I accept the offer of a faculty position in the Department of Obstetrics and Gynecology under terms and conditions noted herein, including attachments as noted. I reserve the right to pursue the matter of non-payment of legal fees.
On October 9, 1989, the University requested that the PC dismiss Duello's complaint because the only issue reserved by Duello in the settlement was the payment of her attorney's fees, and the PC did not have jurisdiction to order the payment of legal fees for the University's "internal review process." On November 13, 1989, Duello refused to withdraw her complaint and asked that the PC determine her entitlement to attorney's fees. On March 9, 1990, the PC, relying on New York Gaslight Club, Inc. v. Carey, 447 U.S. 54 (1980), declined to award attorney's fees incurred in the CFRR proceedings because they were not required proceedings under Title VII. Since the PC found no basis on which attorney's fees could be awarded, it dismissed the case as moot.
On October 22, 1990, Duello brought this action in the circuit court pursuant to Title VII seeking a judgment determining that she was discriminated against on the basis of her sex. Duello sought reasonable attorney's fees for legal services in the court action and in the proceedings before the PC and the CFRR. In filing the circuit court action, Duello did not seek review of the PC's decision. Her action is based on her right-to-sue letter.[3] The circuit court granted the Board of Regents of the University of Wisconsin System's (Board's) motion for summary judgment dismissing Duello's action concluding that Duello's recovery of attorney's fees was inappropriate because Title VII allows recovery *969 of attorney's fees only for mandatory state administrative proceedings, and the CFRR proceedings were an optional review process. The court of appeals reversed. See Duello v. University Board of Regents, 170 Wis. 2d 27, 487 N.W.2d 56 (1992). We accepted the Board's petition for review.
Section 706(k) of Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e-5(k) provides in relevant part:
In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs....
Title VII also contains an exhaustion requirement which mandates that "no charge may be filed [with the EEOC] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law ..." § 706(c). Section 706(c)'s exhaustion requirement has resulted in the EEOC promulgating a referral and deferral system by which a charge that is filed with the EEOC prior to exhaustion is referred by the EEOC to the appropriate local agency. The local agencies to which the EEOC refers and defers charges are called the "FEP Agencies". 29 C.F.R. § 1601.70(a) (1992).[4] The FEP agency in the State of Wisconsin is the PC. 29 C.F.R. § 1601.74.
[1]
The issue we must address on this review is whether the optional internal review proceedings before the CFRR, a non FEP agency, were "proceedings" within the meaning of § 706(k) of Title VII such that the circuit *970 court could have allowed Duello to recover the attorney's fees which she incurred in the CFRR administrative proceedings. Stated more generally, the issue on this review is whether § 706(k) of Title VII supports an award of attorney's fees for services rendered in an "optional" internal grievance procedure, as opposed to an administrative procedure to which a complainant is required to resort prior to filing a Title VII action in court. This is a question of law which we review de novo without deference to the decisions of the lower courts.
The United States Supreme Court discussed the meaning of § 706(k)'s phrase "action or proceeding" in Carey, 447 U.S. 54. Carey concerned a claimant who filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that the New York Gaslight Club denied her a position as a cocktail waitress because of her race. Id. at 56-57. As required by § 706(c) of Title VII, the EEOC referred the claimant's claim to the appropriate New York administrative agency. Id. While the state action was pending, the claimant, after receiving a right-to-sue letter from the EEOC, filed a complaint in the district court. Id. at 58. The claimant prevailed at the administrative level, and the Appellate Division of the New York Supreme Court ultimately upheld the decision of the State Human Rights Appeals Board. Id. The parties thereafter agreed that the district court action would be dismissed except for the plaintiff's request for attorney's fees. Id. at 59. The district court denied the request for fees. The Appeals Court reversed and the United States Supreme Court granted certiorari.
The Supreme Court framed the issue before it in Carey as follows: "whether, under Title VII of the Civil Rights Act of 1964, a federal court may allow the prevailing party attorney's fees for legal services performed in prosecuting an employment discrimination claim in *971 state administrative and judicial proceedings that Title VII requires federal claimants to invoke." Id. at 56. The Court held that "Congress" use of the broadly inclusive disjunctive phrase `action or proceeding' indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings." Id. at 61. Furthermore, the Court concluded that the term "proceeding" was intended to reach not only federal administrative and judicial proceedings, but state proceedings as well. Id. at 62.
The Board contends that Carey allows the award of attorney's fees for work done in state administrative proceedings held before "FEP agencies." According to the Board, neither the holding nor the reasoning of the Court in Carey supports Duello's argument that Title VII allows fee awards for an optional proceeding such as a CFRR review. As support for its contention, the Board points out that the Supreme Court defined "proceedings" as "the state and local remedies to which complainants are required to resort." Id. at 62. (Emphasis added). In addition, the Board cites the following passage from Carey to support its interpretation:
This Court recently examined the legislative history and purpose of § 706(k).... It is clear that Congress intended to facilitate the bringing of discrimination complaints. Permitting an attorney's fee award to one in respondent's situation furthers this goal, while a contrary rule would force the complainant to bear the costs of mandatory state and local proceedings and thereby would inhibit the enforcement of a meritorious discrimination claim. Id. at 63. (Emphasis added).
Duello argues that the reasoning and holding of Carey applies to optional state or local proceedings in *972 which the provisions of Title VII are enforced. Duello acknowledges the Carey Court's references to "mandated procedures" and its "required to resort" language, but argues that the following language more accurately reflects the Supreme Court's holding:
throughout Title VII the word `proceeding,' or its plural form, is used to refer to all the different types of proceedings in which the statute is enforced, state and federal, administrative and judicial. The conclusion that fees are authorized for work done at the state and local levels is inescapable. Id. at 62-63. (Emphasis added). (Footnote omitted).
Courts vary on the correct interpretation of the Supreme Court's discussion of Title VII's attorney's fee provision. The Board and Duello each point to decisions from other courts which support their respective positions. The Board urges us to adopt the reasoning of the Tenth Circuit in Manders v. Okl. Ex Rel Dept. of Mental Health, 875 F.2d 263 (10th Cir. 1989). In Manders, the court held that internal grievance procedures are not "actions or proceedings" under section 706(k) because they are not "required or mandated procedures to which complainants must resort prior to bringing a Title VII action in the district court." Id. at 266. In reaching this conclusion, the court noted that an internal grievance procedure is not a precondition to enforcement of Title VII rights, but rather is a mechanism additional to FEP agency procedures. Id. at 267. Thus, the court reasoned, optional procedures cannot be said to be an integral part of the Title VII enforcement scheme such that attorney's fees should be awarded for work done in such procedures because a claimant always has the choice of going to the FEP agency. Id.
A contrary result was reached in Moreno v. City and County of San Francisco, 567 F. Supp. 458 (N.D. Cal. *973 1983), a case Duello encourages us to follow. In Moreno, a claimant filed a discrimination charge with the San Francisco Civil Service Commission (CSC) and shortly thereafter with the FEP agency, the California Department of Fair Employment and Housing (DFEH). Id. at 459. The CSC awarded the claimant injunctive and monetary relief but not fees and costs. Id. The DFEH, which had held its proceedings in abeyance, then withdrew its accusations against the defendants. Id. The claimant then brought a Title VII action in court seeking to recover the fees he incurred in the proceedings before the CSC. Id. The defendants argued that the claimant was not entitled to fees because he was not required to resort to proceedings before the CSC, and therefore the CSC's proceedings could not be considered a part of the Title VII scheme, but were merely "collateral." Id. The court acknowledged that some language in Carey supports this argument, but concluded that the opinion's reasoning does not:
Moreno obtained complete relief in a local proceeding; to deny him attorney's fees would be to create an `incentive to get into federal court.' It is immaterial that Moreno was not `required' to proceed before the CSC in the sense that the EEOC would not have referred his complaint directly to that agency; he was required to proceed before the DFEH, and that agency deferred to the CSC. For practical purposes, the CSC was thus incorporated into the Title VII scheme. Moreno, 567 F. Supp. at 459-460.
Duello also urges us to follow the reasoning of the Seventh Circuit Court of Appeals' decision in Chrapliwy v. Uniroyal Inc., 670 F.2d 760 (7th Cir. 1982). At issue in Chrapliwy was the recovery of attorney's fees for efforts spent trying to persuade the government to debar the *974 defendant from its federal contracts, efforts which led directly to the settlement of the Title VII action which was pending at the time. Id. at 766. In response to the circuit court's conclusion that fees could not be awarded for such efforts because they were not mandated by the Title VII statute or related and required procedures, the Seventh Circuit stated:
We think this interpretation of Section 706(k) is too narrow. The plaintiffs at all times pursued their Title VII action. Their efforts to have the defendant debarred from its federal contracts on the basis of the same discrimination charged in the Title VII action were designed to move the Title VII case toward ultimate disposition. This desired effect was achieved, because the threat of debarment on account of discrimination caused the defendant to settle the Title VII action. Thus, the plaintiffs' pursuit of debarment was a service which contributed to the ultimate termination of the Title VII action, and in that sense was within the Title VII action. Id. at 767.
[2]
Despite limited authority to the contrary, we conclude that the language and reasoning of the Carey opinion, as well as public policy, control our decision in this case that Duello is not entitled to recover her attorney's fees for the optional state administrative proceedings before the CFRR. Carey specifies that Title VII allows the recovery of attorney's fees only for those administrative proceedings which claimants are required to invoke before filing a court action. The Carey opinion is replete with language that evidences this limitation. In addition to the "required to resort" language and the "mandatory procedures" language quoted above, the Carey Court summarized its conclusions as follows:

*975 In sum, we conclude that §§ 706(f) and 706(k) of Title VII authorize a federal-court action to recover an award of attorney's fees for work done by the prevailing complainant in state proceedings to which the complainant was referred pursuant to the provisions of Title VII. Carey, 447 U.S. at 71. (Emphasis added).
The state proceedings to which complainants are referred pursuant to Title VII are proceedings before FEP agencies, not optional internal review proceedings.
Furthermore, we find the language cited by Duello as evidence of her position unpersuasive. Duello claims that the Carey Court clearly indicated that attorney's fees are allowed for any proceeding "in which the statute is enforced ...", including optional internal review proceedings. Carey, 447 U.S. at 62. Although this language appears to support Duello's position, read in context, it is evident that this language was used only as a response to the argument that the words "or proceedings" authorize fee awards only for work done in mandatory federal administrative proceedings. See Carey, 447 at 61 ("It might be argued that the words `or proceeding' authorize fee awards only for work done in federal administrative proceedings"). The language does not negate the limiting language used elsewhere in the opinion which evidences the Court's holding that Title VII allows fee awards only for mandatory state and federal proceedings.
In addition to the language used by the Court in Carey, the Court's reasoning also supports the Board's position concerning the meaning of the term "proceeding." Most of the Court's discussion in Carey involved reading Title VII's fee provision in conjunction with Title VII's deferral and referral enforcement scheme which was outlined earlier in this opinion:

*976 Section 706(k) authorizes a fee award to the prevailing party in `any... proceeding under this title.' (Emphasis added.) The same Title creates the system of deferral to state and local remedies. The statute uses the word `proceeding' to describe the state and local remedies to which complainants are required to resort. Carey 447 U.S. at 62.
The Carey Court read the attorney's fee provision together with the referral and deferral provision and reasoned that disallowing fees for state administrative proceedings would inhibit the referral and deferral enforcement scheme in that it would inhibit the enforcement of meritorious claims at the state level. According to the Court, if no fees are allowed for state proceedings which Title VII requires claimants to invoke, claimants will likely wait out the deferral period rather than actively pursue their claims in a state proceeding where they are forced to bear the cost. Carey, 447 U.S. at 63. Specifically, the Court explained:
Congress viewed proceedings before the EEOC and in federal court as supplements to available state remedies for employment discrimination. Initial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief.
The construction of § 706(k) that petitioners advocate clashes with this congressional design. Complainants unable to recover fees in state proceedings may be expected to wait out the 60-day deferral period, while focusing efforts on obtaining federal relief. Only authorization of fee awards ensures incorporation of state procedures as a meaningful part of the Title VII enforcement scheme. Id. at 65. (Citations omitted). (Emphasis added).
*977 [3]
Optional state procedures are not a part of the Title VII deferral and referral enforcement scheme, and therefore the denial of fees for these procedures does not clash with the "congressional design". The problem faced by Title VII claimants that the Carey Court concluded section 706(k) was designed to solve is not present in a situation involving optional internal grievance procedures. As the court in Manders explained, claimants can file charges with FEP agencies, thus exhausting their state remedies without resort to internal grievance procedures. Consequently, the denial of fees for optional procedures does not deter claimants from asserting their rights at the state level because if the cost of attorney's fees acts as a barrier to invoking the optional procedure, claimants are still able to vindicate their rights by resorting to the FEP agency. See Manders, 875 F.2d at 267.
The Carey Court also expressed concern that disallowing fees for required state administrative proceedings might not only deter enforcement at the state level, but might deter claimants from bringing discrimination claims at all. The Court opined that Congress' purpose of extending attorney's fees to required state and local remedies was to address the concern that complainants would be inhibited from bringing suit due to fear of costs of losing at the administrative level, a level which they were required to exhaust before bringing a claim into court:
It is clear that Congress intended to facilitate the bringing of discrimination complaints. Permitting an attorney's fee award to one in respondent's situation furthers this goal, while a contrary rule would force the complainant to bear the costs of mandatory state and local proceedings and thereby would inhibit the *978 enforcement of a meritorious discrimination claim. Carey, 447 U.S. at 63.
Optional proceedings do not raise a similar concern. As noted earlier, if claimants do not want to bear the costs of fees, they can pursue their claims before a FEP agency.
That the Carey decision interpreted Title VII's fee provision to encompass only mandatory state administrative proceedings is also evidenced by the Supreme Courts's subsequent decision in Webb v. Dyer County Bd. of Ed., 471 U.S. 234 (1985). At issue in Webb was the payment of fees under the Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988 for time spent pursuing optional administrative proceedings in a claim to enforce 42 U.S.C. § 1983. In distinguishing Carey from the situation presented in Webb, the Court emphasized the specificity of its holding in Carey that attorney's fees are recoverable for state administrative remedies "`to which the complainant was referred pursuant to the provisions of Title VII.'" Webb at 240. The Court explained that Carey is inapposite to a § 1983 claim for fees because "Carey... arose under a statute that expressly requires the claimant to pursue available state remedies before commencing proceedings in a federal forum. There is no comparable requirement in § 1983, and therefore the reasoning in Carey is not applicable to this case." Id. (citation omitted). See also N.C. Dept. of Transp. v. Crest St. Council, 479 U.S. 6, 11 (1986) (Carey held that "mandatory state employment discrimination proceedings are proceedings to enforce Title VII....").
Numerous federal circuit court opinions support the Board's interpretation of Carey as well, see, e.g., Moore v. District of Columbia, 907 F.2d 165, 168 (D.C. Cir. 1990) (Carey dealt with whether a party can recover fees *979 incurred in necessary state administrative proceedings); Roebuck v. Drexel University, 852 F.2d 715, 739 n.44 (3rd Cir. 1988) ("a Title VII plaintiff can secure attorneys' fees for the time spent pursuing administrative remedies required by Title VII ..."); Exeter-West Greenwich Regional Sch. v. Pontarelli, 788 F.2d 47, 52 (1st Cir. 1986) ("under Title VII, where exhaustion of administrative remedies is required before suit may be brought, attorney's fees for prior state administrative proceedings are recoverable...."); Horacek v. Thone, 710 F.2d 496, 499 (1983) (Carey held that "under Title VII, a ... court may allow the prevailing party attorney fees for legal services performed in prosecuting an employment discrimination claim in state administrative and judicial proceedings that Title VII requires ... claimants to invoke.").
As mentioned earlier, Duello draws our attention to Chrapliwy and Moreno as federal court cases supporting her position. Even were we to agree that in certain instances the holding of Carey extends beyond allowing fees only for mandatory administrative and judicial proceedings, we would conclude that Chrapliwy and Moreno differ from the case at issue. In Chrapliwy, the plaintiffs' pursuit of the defendant's debarment "led directly to the settlement of the Title VII action" which "was well underway when the plaintiffs began activities regarding the defendant's debarment." Chrapliwy, 670 F.2d at 766. As the circuit court in this case noted, the instant case is not analogous in that Duello "obtained relief through settlement negotiations subsequent to the CFRR hearings, proceedings separate and distinct from her Title VII action."
Similarly, Moreno differs from the case at issue in that the CSC proceedings were not an internal review process comparable to CFRR proceedings. Additionally, *980 Duello settled her discrimination claim, and thus the PC was not in a position to confront findings by the CFRR with regard to discrimination by the Anatomy Department. On the contrary, in Moreno, the DFEH held its proceedings in abeyance, deferring to that agency, and later withdrew its accusation against the defendants when the CSC awarded Moreno injunctive and monetary relief. Moreno, 547 F. Supp. at 459. Thus, in Moreno, in effect, the CSC proceedings became a part of the Title VII enforcement scheme. This is not true of the CFRR in this case because Duello settled her claim on the merits subsequent to the CFRR proceedings.
[4]
Lastly, we note that disallowing fees for optional internal review proceedings is good public policy. If this court were to hold that recovery of fees is allowed for optional internal review proceedings, employers would tend to be discouraged "from instituting such potentially ameliorative procedures." Manders, 875 F.2d at 267. Following the Supreme Court's definitive construction of § 706(k) in Carey, as we have done in this case, avoids this result and encourages the resolution of discrimination claims at the local level.
Duello sets forth a contrary public policy argument. She contends that disallowing fees for optional internal grievance procedures will nonetheless hinder enforcement at the local level in that claimants will forego invoking an internal review procedure rather than risk bearing the cost of attorney's fees. We disagree. We agree with the United States Supreme Court's response to a similar argument put forth in regards to the recovery of attorney's fees under § 1988:
Of course, competent counsel will be motivated by the interests of the client to pursue state administrative remedies when they are available and counsel *981 believes that they may prove successful. We cannot assume that an attorney would advise the client to forgo an available avenue of relief solely because § 1988 does not provide for attorney's fees for work performed in the state administrative forum. Webb, 471 U.S. at 241, n.15.
Competent attorneys will not forego advising their clients to pursue the best avenue possible to obtain the relief desired by the client solely because attorney's fees are not recoverable for certain optional procedures.
[5]
For the reasons set forth above we conclude that Title VII allows the recovery of reasonable attorney's fees only for those state administrative proceedings that Title VII requires a claimant to invoke prior to bringing a Title VII action in court. Because the internal review proceedings before the CFRR were an optional review process which Duello was not required to invoke pursuant to Title VII, she is not entitled to attorney's fees. Accordingly, we reverse the decision of the court of appeals.
The dissent forcefully and persuasively argues that "discrimination in the work place is an evil that must be eradicated and that those individuals who are the victims of such discrimination should be made whole...." Duello v. Board of Regents, dissenting op. at 984. However, in support of this sentiment, the dissent cites only two cases, Anderson v. Labor & Industry Rev. Comm., 111 Wis. 2d 245, 330 N.W.2d 594 (1983), and Watkins v. LIRC, 117 Wis. 2d 753, 763, 345 N.W.2d 482 (1984). Both of these Wisconsin cases are an interpretation of the Wisconsin Fair Employment Act. The Wisconsin Fair Employment Act is not at issue here; Title VII, a federal act, is the issue. The United States Supreme Court has interpreted the very issue present here in *982 Carey and we have, perhaps reluctantly but certainly necessarily, followed that interpretation. The dissent cites no federal cases in support of its position. The dissent cites no cases that say we, as a state supreme court, are free to disregard an interpretation by the United States Supreme Court of federal law.
By the Court.The decision of the court of appeals is reversed.
Justice SHIRLEY S. ABRAHAMSON took no part in this decision.
LOUIS J. CECI, J. (dissenting).
Because I agree with the unanimous three-judge opinion of the court of appeals and, further, because I believe that this state should continue its lead in assuring that individuals who are the victims of sex discrimination in the work place are "made whole," I dissent.
That Dr. Duello was a victim of sex discrimination by the University of Wisconsin System is not in doubt. That the said discrimination subjected Dr. Duello to an "offensive and hostile environment" that clearly and directly was detrimental to Dr. Duello's advancement in the Anatomy Department also is not in question.
The "optional" proceedings directly led to the negotiations and settlement that gave to Dr. Duello an assistant professorship in the Department of Obstetrics and Gynecology. Because the Chancellor did not completely follow the recommendations of the CFRR, Dr. Duello was forced to continue her claim for attorney's fees before the Personnel Commission.
Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000e, et seq., is a broad statute designed to make the victims of discrimination "whole" and therefore provides, while encouraging conciliation and resolution in *983 state forums, that the prevailing party may recover attorney's fees.
The majority holding today flies in the face of many of our previous decisions that recognize that victims of discrimination should be "made whole." Our rationale that victims be made whole finds its roots in the laudable public policy expressed in many of our past decisions. In Anderson v. Labor & Industry Rev. Comm., 111 Wis. 2d 245, 330 N.W.2d 594 (1983), we expressly awarded prejudgment interest on back pay although the statute contained no provision for such an award. Our rationale there was that we would not only make a victim of employment discrimination whole but that we would also discourage discriminatory practices. Anderson, 111 Wis. 2d at 258-60. I am concerned that the majority's opinion will not continue our strongly expressed desire to make people "whole" and to "discourage discriminatory practices in the employment area." See Watkins v. LIRC, 117 Wis. 2d 753, 763, 345 N.W.2d 482 (1984).
This plaintiff acted to protect her rights and to vindicate established public policy as set forth in our case law. She was acting as a private attorney general, and she followed administrative rules specifically intended to remedy employment discrimination without resort to the courts. Such efforts should be encouraged and utilized, and the payment of attorney's fees in this case would send a clear and convincing message that further discriminatory practices at the University of Wisconsin will not be tolerated.
I believe that Dr. Duello's appeal to the CFRR under Wis. Admin. Code sec. UWS 3.08 and University of Wisconsin-Madison Faculty Policies and Procedures sec. 7.10 was indeed a proceeding under Title VII of the Civil Rights Act of 1964 and, further, that the circuit *984 court should have awarded Dr. Duello reasonable attorney's fees under sec. 706(k) of said Act.
To permit the Board of Regents of the University of Wisconsin System to hide behind such a strained interpretation of the Civil Rights Act of 1964, as does this court's decision, does a disservice to the fight against discrimination in the work place.
Because I firmly believe that discrimination in the work place is an evil that must be eradicated and that those individuals who are the victims of such discrimination should be made whole, I dissent from the holding of the court in this case.
I am authorized to state that Chief Justice HEFFERNAN joins in this dissenting opinion.
NOTES
[1] Wisconsin Administrative Code sec. UWS 3.08 provides in relevant part:

Appeal of a nonrenewal decision. (1) The faculty and chancellor of each institution, after consultation with appropriate students, shall establish rules and procedures for the appeal of a nonrenewal decision. Such rules and procedures shall provide for the review of a nonrenewal decision by an appropriate standing faculty committee upon written appeal by the faculty member concerned within 20 days of notice that the reconsideration has affirmed the nonrenewal decision.... Such review shall be held not later than 20 days after the request, except that this time limit may be enlarged by mutual consent of the parties, or by order of the review committee. The faculty member shall be given at least 10 days notice of such review. The burden of proof in such an appeal shall be on the faculty member, and the scope of the review shall be limited to the question of whether the decision was based in any significant degree upon one or more of the following factors, with material prejudice to the individual:
....
(b) Factors proscribed by applicable state or federal law regarding fair employment practices ...
....
(2) The appeals committee shall report on the validity of the appeal to the body or official making the nonrenewal decision and to the appropriate dean and the chancellor.
(3) Such a report may include remedies which may, without limitation because of enumeration, take the form of a reconsideration by the decision maker, a reconsideration by the decision maker under instructions from the committee, or a recommendation to the next higher appointing level. Cases shall be remanded for reconsideration by the decision maker in all instances unless the appeals committee specifically finds that such a remand would serve no useful purpose. The appeals committee shall retain jurisdiction during the pendency of any reconsideration. The decision of the chancellor will be final on such matters.
[2] Section 111.375(2), Stats., provides:

This subchapter applies to each agency of the state except that complaints of discrimination, unfair honesty testing or unfair genetic testing against the agency as an employer shall be filed with and processed by the personnel commission under s. 230.45(1)(b). Decisions of the personnel commission are subject to review under ch. 227.
[3] The court of appeals raised questions concerning the propriety of the right-to-sue letter. No issue concerning the right-to-sue letter or the propriety of Duello's circuit court action is before us.
[4] These agencies were previously referred to as "706 agencies." See 29 C.F.R. § 1601.70(a) (1990).