MARTEN TRANSPORT, LTD., Petitioner-Respondent-Cross Appellant-Petitioner,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent-(In Trial Court),

LABOR & INDUSTRY REVIEW COMMISSION, Respondent-Respondent-Cross Respondent,

Connie LIEBRANDT, Respondent-Appellant-Cross Respondent.†

Supreme Court

*No. 92-0244. Oral argument May 25, 1993.—Decided June 22, 1993.*

(Also reported in 501 N.W.2d 391.)

†Motion for reconsideration filed July 9, 1993.

1013

1014

For the petitioner-respondent-cross appellant-petitioner there were briefs by *Jon P. Axelrod, Cynthia A. Curtes* and *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.,* Madison and oral argument by *Mr. Axelrod.*

For the respondent-appellant-cross respondent-respondent there was a brief by *Terry L. Moore, Stephanie L. Finn* and *Herrick, Hart, Duchemin, Danielson & Guettinger, S.C.,* Eau Claire and oral argument by *Mr. Moore.*

Amicus curiae brief was filed by *Patrick K. Stevens,* Madison for Wisconsin Manufacturers & Commerce.

DAY, J.   This is a review of a published decision of the court of appeals[1] affirming in part and reversing in part a judgment of the circuit court for Buffalo County, Honorable Robert Wing, Judge. This case presents the issue of whether an employee who was discriminated against in violation of the Wisconsin Fair Employment Act (WFEA)[2] is entitled to back pay and reinstatement after voluntarily quitting a job without being actually or

---

[1] *Marten Transport, Ltd. v. DILHR,* 171 Wis. 2d 147, 491 N.W.2d 96 (Ct. App. 1992).

[2] *See* Secs. 111.31–111.395, Stats.

1015

constructively discharged by the employer. We hold that a voluntary resignation terminates the accrual of back pay[3] and the employer's obligation to reinstate. We therefore reverse the court of appeals.

The relevant facts are not in dispute. Marten Transport, Ltd. (Marten), an interstate motor carrier headquartered in Mondovi, Wisconsin, hired Ms. Connie Liebrandt to perform clerical work in March, 1986. In October, 1986, Marten transferred Liebrandt to the dispatch department, where Liebrandt served as a dispatch clerk. As a dispatch clerk, Liebrandt earned $5.00 per hour and worked approximately forty hours per week.

As part of a departmental restructuring during the Fall of 1987, Marten eliminated all dispatch clerk positions and created assistant dispatcher positions. While dispatch clerks merely assisted dispatchers and were not trained to act in place of dispatchers, assistant dispatchers are trained to handle the duties of a dispatcher and, when required, actually act as dispatchers. The assistant dispatchers are paid $300.00 to $350.00 per week.

After advertising for and interviewing candidates, Marten filled the assistant dispatcher positions. Liebrandt did not apply for an assistant dispatcher position but claims that she would have had she been aware of the openings. Marten informed Liebrandt that her position was being eliminated and that if she wished she would be transferred to another department within the company at the same rate of pay. Marten refused the transfer and submitted a resignation.

Shortly after quitting, Liebrandt filed a complaint with the United States Equal Employment Opportunity Commission and the Equal Rights Division of the Wisconsin Department of Industry, Labor and Human Rela-

---

[3] The employee is still able to collect back pay from the time of the discrimination up until the time of her resignation.

tions (DILHR). The complaint alleged sex and marital status discrimination and stated that Liebrandt was "forced to resign if not willing to accept demotion."

DILHR Administrative Law Judge Gary L. Olstad conducted a hearing and issued a written decision concluding that: (1) Marten discriminated against Liebrandt because of her sex in violation of the WFEA; (2) Marten did not discriminate against Liebrandt because of her marital status; and (3) Marten did not constructively discharge Liebrandt when it offered to transfer her to another department. The Administrative Law Judge awarded Liebrandt reinstatement, back pay[4] until reinstatement, attorneys fees and costs. Marten petitioned the Labor and Industry Review Commission (LIRC) for review and LIRC issued an order and memorandum opinion affirming the decision of the Administrative Law Judge.

Marten then petitioned the circuit court for review. The circuit court reversed the portion of the order requiring back pay, stating, "[t]he cases clearly stand for the proposition that an employee who is not constructively discharged from her employment may not receive any back pay after the date of her voluntary resignation. In this respect, [this] court feels that the Commission went too far when it awarded Liebrandt back pay after the date of her resignation." However, the circuit court affirmed LIRC's order in all other respects, including the award of reinstatement.

Both Liebrandt and LIRC appealed the portion of the circuit court's decision reversing the back pay award. Marten cross-appealed the portion of the circuit court's

---

[4] The back pay was computed as the difference between what Liebrandt would have earned as an assistant dispatcher and what she would have earned had she not terminated her employment, less any interim earnings.

decision upholding the award of reinstatement. After Marten filed its appellate brief, LIRC, through its attorneys from the Wisconsin Attorney General's office, voluntarily dismissed its appeal and withdrew the brief previously filed in support of its appeal. Nonetheless, the court of appeals reversed the portion of the circuit court's decision which disallowed back pay and affirmed the portion of the circuit court's judgment which allowed reinstatement.

This court accepted Marten's petition for review. We note that Marten did not seek judicial review of the finding that it had discriminated against Liebrandt in violation of the WFEA. We also note that Liebrandt did not seek judicial review of the finding that Marten did not constructively discharge her. Thus, we accept the findings that Marten discriminated against Liebrandt in violation of the WFEA but did not constructively discharge her. The sole issue presented by this case, therefore, is whether an employee who has been discriminated against in violation of the WFEA is entitled to back pay and reinstatement even if the employee voluntary quits without being actually or constructively discharged.[5] Marten argues that an employee who voluntarily quits a job is not entitled to reinstatement or back pay unless the employee proves a constructive discharge. We agree.

The issue presented is a question of law which involves a determination of the remedies available under the WFEA. This court is not bound by LIRC's interpretation of the WFEA. *Anderson v. Labor & Industry Rev. Comm.*, 111 Wis. 2d 245, 253, 330 N.W.2d 594 (1983). As

---

[5] Since we accept the finding that Liebrandt was not constructively discharged, we need not define the test for determining whether an employer has constructively discharged an employee.

a general rule, however, an agency's determination is entitled to great weight if the agency's experience, technical competence and specialized knowledge aid the agency in its determination. *See Jicha v. DILHR,* 169 Wis. 2d 284, 290-91, 485 N.W.2d 256 (1992). In the present case, LIRC's decision is not entitled to any weight because LIRC has taken contrary positions on the issue presented. In a case decided less than two months after the present case, LIRC did not award the plaintiff either back pay or reinstatement even though LIRC found that the employer discriminated against the plaintiff in violation of the WFEA but did not constructively discharge the plaintiff. *Waedekin v. Marquette University,* LIRC, March 5, 1991. Thus, in a period of two months, LIRC decided two cases in which a plaintiff proved discrimination in violation of the WFEA but failed to show a constructive discharge. Although LIRC awarded back pay and reinstatement in the present case, LIRC did not award either in *Waedekin.* Such inconsistency leads us to give no weight to either decision.[6]

The WFEA does not contain a specific provision which addresses the issue of whether an employer must provide back pay and allow reinstatement in cases where the employee voluntarily quits without being actually or constructively discharged. The WFEA merely provides in pertinent part:

> If, after hearing, the examiner finds that the respondent has engaged in discrimination, unfair honesty testing or unfair genetic testing, the examiner shall make written findings and **order such action by the respondent as will effectuate the purpose of this subchapter, *with or without***

---

[6] We also note that LIRC withdrew its brief in support of its decision in this case.

***back pay***. Section 111.39(4)(c), Stats. (emphasis added).

This language does not mention the remedy of reinstatement. Furthermore, this language specifically states that the examiner may refuse to award back pay, even when discrimination is found. Additionally, Liebrandt has not cited any legislative history suggesting that the constructive discharge doctrine not apply to the WFEA. Thus, an examiner may decline to award reinstatement and back pay as long as the decision is consistent with the purpose of the WFEA.

"We have previously identified two purposes of the Fair Employment Act: 1) to make the individual victims of discrimination 'whole'; and 2) to discourage discriminatory practices in the employment area." *Watkins v. LIRC*, 117 Wis. 2d 753, 763, 345 N.W.2d 482 (1984). Likewise, the United States Supreme Court has identified two similar goals of Title VII of the federal Civil Rights Act, 42 U.S.C. sec. 2000e, *et seq.* ("Title VII"). "[A] primary objective of Title VII is prophylactic: to achieve equal employment opportunity and to remove the barriers that have operated to favor white male employees over other employees. . . . An equally important purpose of the Act is 'to make persons whole for injuries suffered on account of unlawful employment discrimination." *Teamsters v. United States*, 431 U.S. 324, 364 (1977).

Considering that the WFEA and Title VII serve identical purposes, it is appropriate to consider federal decisions discussing the constructive discharge doctrine. For example, this court considered federal decisions in interpreting the WFEA in *Anderson v. LIRC*, 111 Wis. 2d at 254. We acknowledge that we are not bound by the federal decisions and must disregard such decisions if they conflict with our Legislature's intent in enacting

1020

the WFEA. Although Title VII and the WFEA are not identical, the differences are not sufficient to keep us from considering the vast amount of federal law discussing the constructive discharge doctrine.

The United States Court of Appeals for the Seventh Circuit applied the constructive discharge doctrine in *Brooms v. Regal Tube Co.,* 881 F.2d 412 (7th Cir. 1989). In *Brooms,* the court held that a plaintiff who has been discriminated against in violation of Title VII can collect back pay only if the plaintiff "can demonstrate that the defendant discharged him or her, either actually or constructively." *Id.* at 423. The court's decision in *Brooms* makes clear that the constructive discharge doctrine would have applied to Liebrandt's claim if the claim was in federal court pursuant to Title VII rather than state court.

The United States Court of Appeals for the Seventh Circuit is in accord with other federal circuit courts which have applied the constructive discharge doctrine. The court of appeals noted that "the federal courts have strongly stated that under federal law, short of abuse amounting to a constructive discharge, employees complaining of civil rights abuses in the workplace must remain in their situation in order to obtain a remedy." *Marten,* 171 Wis. 2d at 154.

The United States Court of Appeals for the District of Columbia Circuit applied the constructive discharge doctrine in *Clark v. Marsh,* 665 F.2d 1168 (1981). In *Clark,* the federal district court held that a plaintiff proved discrimination in violation of Title VII and awarded back pay and reinstatement even though the plaintiff retired shortly after she was denied a promotion. On appeal, the defendant argued that the plaintiff was not entitled to reinstatement and backpay for the period subsequent to the date of her retirement. The

court stated, "[t]o sustain this portion of the district court's award, we must still agree that Clark was, in fact, constructively discharged." *Id.* at 1173.

The United States Court of Appeals for the First Circuit applied the constructive discharge doctrine in *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114 (1977). In *Rosado,* the plaintiff, a government employee, refused to accept a transfer on the grounds that the transfer constituted punishment for speech protected by the First Amendment. The court stated that, "[s]hould it be found that Alicea's transfer did not amount to a constructive discharge, he would not be entitled to recover damages for lost wages as he had a duty to remain on the job collecting his regular pay until relief from the Bayamon Assignment was afforded by legal process." *Id.* at 120. The court reasoned:

> [u]nless the transfer is, in effect, a discharge, the employee has no right simply to walk out; . . .. Were this not so, a public employee would be encouraged to set himself up as the judge of every grievance; and the public taxpayer would end up paying for periods of idleness while the grievance was being adjudicated. *Id.* at 119.

The United States Court of Appeals for the Third Circuit discussed the constructive discharge doctrine in *Goss v. Exxon Office Systems Co.,* 747 F.2d 885 (1984). In *Goss,* the court stated, "[c]lassifying a termination as a constructive discharge rather than a voluntary quit has significant ramifications with respect to the scope of relief." *Id.* at 887. The court then noted that "[t]he courts of appeals which have addressed the question have recognized the appropriateness of [the constructive discharge doctrine's] application to the branch of labor law encompassed in Title VII." *Id.* (citing *Pena v. Brattleboro Retreat,* 702 F.2d 322, 325 (2d Cir. 1983); *Irving*

*v. Dubuque Packing Co.,* 689 F.2d 170, 173–74 (10th Cir. 1982); *Nolan v. Cleland,* 686 F.2d 806, 812–15 (9th Cir. 1982); *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir. 1982); *Clark v. Marsh,* 665 F.2d 1168, 1174–76 (D.C. Cir. 1981); *Meyer v. Brown & Root Const. Co,* 661 F.2d 369, 372 (5th Cir. 1981); *Welch v. University of Texas and Its Marine Science Institute,* 659 F.2d 531, 533–34 (5th Cir. 1981); *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir. 1981); *Pittman v. Hattiesburg Municipal Separate School District,* 644 F.2d 1071, 1077 (5th Cir. 1981); *Bourque v. Powell Electrical Mfg. Co.,* 617 F.2d 61, 65 (5th Cir. 1980); *Alicea Rosado v. Garcia Santiago,* 562 F.2d 114, 119 (1st Cir. 1977); *Jacobs v. Martin Sweets Co., Inc.,* 550 F.2d 364, 369 (6th Cir), *cert denied,* 431 U.S. 917 (1977); *Thompson v. McDonnell Douglas Corp.,* 552 F.2d 220, 223 (8th Cir. 1977); *Muller v. United States Steel Corp.,* 509 F.2d 923, 929 (10th Cir.), *cert. denied,* 423 U.S. 825 (1975).

The United States Court of Appeals for the Fifth Circuit recently applied the constructive discharge doctrine in *Jurgens v. E.E.O.C.,* 903 F.2d 386 (5th Cir. 1990). In *Jurgens,* the district court found that the EEOC's San Francisco Regional Litigation Center violated Title VII, the same law which the EEOC is supposed to enforce, by engaging in a pattern of discrimination against white males. Even though the plaintiff succeeded on his Title VII discrimination claim, the court stated, "it is well settled in this circuit that, in order for an employee to recover back pay for lost wages beyond the date of his retirement or resignation, the evidence must establish that the employer constructively discharged the employee." *Id.* at 389. The court explained that "Title VII itself accords legal protection to employees who oppose unlawful discrimination. Moreover, we believe that society and the policies under-

1023

lying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships." *Id.* at 390 (quoting *Bourque v. Powell Electric Mfg. Co.*, 617 F.2d 61, 65-66 (5th Cir. 1980)).

The United States Court of Appeals for the Sixth Circuit applied the doctrine of constructive discharge in *Yates v. Avco Corp.*, 819 F.2d 630 (6th Cir. 1987). In *Yates*, the court held that a plaintiff who proved discrimination in violation of Title VII was not entitled to back pay because she was not constructively discharged. *Id.* at 637.

The United States Court of Appeals for the Eighth Circuit applied the constructive discharge doctrine in *Maney v. Brinkley Mun. Waterworks and Sewer Dept.*, 802 F.2d 1073 (8th Cir. 1986). In *Maney*, the court upheld a district court's finding of discrimination in violation of Title VII. Nevertheless, the court stated, "[a]s a general rule, employees are entitled to awards such as back pay and reinstatement only if they were actually or constructively discharged from their employment." *Id.* at 1075. *See also Dean v. Civiletti*, 670 F.2d 99 (1982) (holding that a plaintiff who proved discrimination in violation of Title VII was denied reinstatement because she did not prove a constructive discharge).

The United States Court of Appeals for the Ninth Circuit applied the constructive discharge doctrine in *Satterwhite v. Smith*, 744 F.2d 1380 (1984). In *Satterwhite*, the court stated, "[a]n employee who quits cannot secure backpay unless his employer constructively discharged him." *Id.* at 1381 n.1 (citing *Muller v. United States Steel Corp.*, 509 F.2d 923 (10th Cir.), *cert denied*, 423 U.S. 825 (1975)). While *Satterwhite* did not involve a claim under Title VII, *Muller*, the case which the court relied on in applying the constructive discharge doctrine,

did apply the constructive discharge doctrine to a Title VII claim.

The United States Court of Appeals for the Tenth Circuit applied the constructive discharge doctrine in *Derr v. Gulf Oil Corp.,* 796 F.2d 340 (10th Cir. 1986). In *Derr,* the district court found that the plaintiff proved discrimination in violation of Title VII and awarded the plaintiff reinstatement and back pay. Although the court upheld the finding of discrimination, the court stated, "[w]e agree with Gulf that the remedies of back pay and reinstatement are not available to Ms. Derr unless she was constructively discharged." *Id.* at 342. *See also Irving v. Dubuque Packing Co.,* 689 F.2d 170 (10th Cir. 1982) (holding that an employee is not entitled to reinstatement absent a constructive discharge).

The above survey of the federal circuits illustrates the enormous amount of support for the constructive discharge doctrine.[7] Such a rule is both sound and consistent with the WFEA. We therefore adopt the rule that an employee who voluntarily quits a position must show a constructive discharge to recover back pay and reinstatement under the WFEA.

The policies underlying the WFEA will be best served if, wherever possible, unlawful discrimination is attacked within the context of the existing employment relationship. Section 111.39(4)(b), Stats. provides that, upon finding probable cause to believe that unlawful discrimination has occurred, DILHR may "endeavor to

---

[7] In discussing the law regarding back pay liability, a leading treatise in this area of the law stated, "[i]n a promotion case, the period of liability will end if the plaintiff voluntarily quits his employment with the defendant absent a constructive discharge." Schlei and Grossman, Employment Discrimination Law 1240–41 (1974).

eliminate the practice by conference, conciliation or persuasion." DILHR conducts a formal hearing only if it is unsuccessful in eliminating the discrimination by conference conciliation or persuasion. This language demonstrates that the Legislature intended that, where possible, the parties would terminate the dispute quickly and efficiently before entering litigious or adversarial proceedings.

In cases where the employer has not treated the employee in such a manner that it amounts to a constructive discharge, the most efficient way to resolve an employment dispute is through a continuing employment relationship. Within the employment relationship, the employee and employer can engage in a continuing dialogue regarding the dispute. Furthermore, the employee will continue to gain experience and will not fall behind co-workers in terms of technological advances or other changes in the field or company.

In some cases, the discrimination will take such a form that it amounts to a constructive discharge. In such cases, the employee is free to resign without forfeiting the right to reinstatement and back pay. Thus, the constructive discharge doctrine is flexible enough to promote a quick and efficient resolution of the employment dispute while protecting the employee against discrimination that amounts to a constructive discharge.

Furthermore, sec. 111.322(3), Stats. expressly prohibits an employer from discharging an employee who files a complaint under the WFEA. Thus, an employee is entitled to keep a job even if the employee files a complaint which is devoid of merit. In such cases, the employer must resolve the dispute with an employee within the context of the employment relationship even

1026

if the bogus claim causes great and irreparable damage to the company's reputation. Fairness mandates that, in cases where the employer's conduct does not result in a constructive discharge, the employee attempt to resolve the dispute within the context of the existing employment relationship rather than walking off the job.

■ This court's decision in *Kelly Co., Inc. v. Marquardt,* 172 Wis. 2d 234, 493 N.W.2d 68 (1992) does not preclude the application of the constructive discharge doctrine in WFEA cases. In *Kelly,* this court held that a constructive discharge was not a prerequisite for reinstatement or back pay under the Wisconsin Family and Medical Leave Act (FMLA). *Id.* at 255. This court, however, did state that "[t]he fact that an employee voluntarily quit his or her employment with an employer is an appropriate factor for the department to consider in determining whether the employee mitigated his or her damages." *Id.*

At the time this court interpreted the FMLA in *Kelly,* there was no federal law equivalent to Wisconsin's FMLA. The WFEA, however, is very similar to Title VII. As stated earlier, we agree with the rationale contained in the federal cases applying the constructive discharge doctrine to claims under Title VII. We therefore adopt the constructive discharge doctrine in cases involving the WFEA.

■ Liebrandt argues that the relevant inquiry is whether she properly mitigated her damages when she quit, not whether she was constructively discharged. A plaintiff made an identical argument in *Jurgens v. E.E.O.C.,* 903 F.2d 386 (5th Cir. 1990). In *Jurgens,* the court rejected the argument, stating, "[w]e find no inconsistency in determining entitlement to such back pay, in

some cases, by whether the employee properly mitigated damages after his retirement or resignation, and in other cases, involving denial of promotion, by whether the employee was constructively discharged." *Jurgens,* 903 F.2d 389. Although this court focuses on the mitigation of damages when an employee quits a position and brings a claim under the Wisconsin FMLA, our agreement with the rationale expressed in the great number of federal cases which apply the constructive discharge doctrine in cases involving Title VII leads us to adopt the constructive discharge doctrine in cases involving the WFEA.

Liebrandt argues that the constructive discharge doctrine does not apply to the present case because the present case involved a failure to hire. We agree that the constructive discharge doctrine does not apply to failure to hire cases. Obviously, if the plaintiff was never employed by the company, there would be no possibility of a discharge, either actual or constructive. We disagree, however, with Liebrandt's contention that the present case involved a failure to hire.

In support of her contention that the present case involved a failure to hire, Liebrandt cites two cases from the Ninth Circuit. *See Thorne v. City of El Segundo,* 802 F.2d 1131 (9th Cir. 1986); *Sangster v. United Airlines Inc.,* 438 F. Supp 1221 (N.D. Cal. 1977), *aff'd,* 633 F.2d 864 (9th Cir. 1980). In *Thorne,* the court stated:

> There is a valid policy reason for limiting backpay awards in promotion cases. The purposes of Title VII are best served when parties, where possible, attack discrimination within the context of their existing employment relationships. An employee, faced with an obstacle in the logical progression and development of a career should not quit at the first sign of institutional discrimination. Restricting

backpay awards encourages the employee to work with supervisors within the existing job setting and employment relationship in an effort to overcome resistance within the workplace and to eradicate the discrimination. *Thorne,* 802 F.2d at 1134 (citations omitted).

The court, however, held that the case involved a failure to hire rather than a failure to promote and refused to apply the constructive discharge doctrine. *Id.* This holding was based on the fact that the plaintiff, who was employed by the City of El Segundo's police department as a clerk-typist, applied for a position as an officer on the City's police force. Although the City of El Segundo was the employer in both positions, the position of clerk-typist and the position of officer were so different that the plaintiff "had no 'existing employment relationship' within the paramilitary structure of the police force." *Id.* at 1134–35.

Like *Thorne, Sangster* involved two very different positions within the same company. In *Sangster,* the defendant would not allow the plaintiff to return to duty as a stewardess, but offered the plaintiff a non-flight position as a stewardess supervisor. The district court held that the defendant "cannot insulate itself from nor set up a defense to a claim of unlawful refusal to hire as to one job, by offering an applicant therefor a second job which she does not want **and which differs in material aspects.**" *Sangster v. United Airlines Inc.,* 438 F. Supp. 1221, 1228–29 (N.D. Cal. 1977) (emphasis added).

*Thorne* and *Sangster* represent a minority of cases where a failure to promote within the company is characterized as a failure to hire. The majority of cases are similar to the Fifth Circuit's decision in *Jurgens v. E.E.O.C.,* 903 F.2d 386 (5th Cir. 1990). In *Jurgens,* the plaintiff was an Assistant Regional Attorney at the

EEOC's San Francisco Regional Litigation Center. When the EEOC decided to abolish the position of Assistant Regional Attorney as part of a reorganization, the EEOC offered the plaintiff a choice between a demotion to the position of Supervisory Trial Attorney or early retirement. When the plaintiff brought an action claiming discrimination on the basis that the EEOC promoted a hispanic male, rather than him, to the position of Regional Attorney, the court applied the constructive discharge doctrine rather than characterizing the discrimination as a failure to hire. *Id.* at 389. The present case is more analogous to *Jurgens* than it is to *Thorne* or *Sangster.*

Technically, every denial of a promotion constitutes a failure to hire because a promotion by definition involves a new position with an increase in compensation or authority. While two positions within a company may differ so much that a failure to promote may constitute a failure to hire, this will be the rare case. In the present case, Liebrandt has failed to show that the position she sought and the position offered were so different that Marten's action constituted a failure to hire rather than a failure to promote.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded for further proceedings consistent with this opinion.

WILLIAM A. BABLITCH, J. *(dissenting).* Connie Liebrandt was discriminated against by her employer, Marten Transport. Marten Transport violated the law. Both of these facts are uncontested.

Who wins? "Marten Transport!" says the majority. Marten Transport receives no penalty for its discrimina-

tory practice of failing to hire Ms. Liebrandt because she was a woman: they do not have to re-hire Connie Liebrandt as an assistant dispatcher, nor do they have to give her the pay she would have received but for the discrimination.

Who loses? "The woman who was discriminated against!" says the majority. She does not get the job to which she was entitled, nor does she get any back pay for the difference in compensation between the new job to which she was entitled and the old job she walked away from.

How can this be? The reason, says the majority, is that she refused to stay on the job after she became the victim of discrimination. The majority says the doctrine of "constructive discharge" applies, and, because she was not constructively discharged, she had to stay on the job or lose all claim to back pay and reinstatement, notwithstanding a subsequent adjudication that she was in fact a victim of discrimination. The majority says that in order to be eligible for back pay and reinstatement, she must stay at a workplace that had treated her in a discriminatory manner, a workplace she was suing for the discriminatory treatment, while her claim went through the court system.

I conclude that the doctrine of "constructive discharge" in a case such as this is an antiquated concept, patronizing in its application, and inequitable in its result. I would at the very least order reinstatement. Because the majority refuses even this most elementary principle of fairness, I dissent.

We are asked in this case to interpret the Wisconsin Fair Employment Act (WFEA). Nothing in the WFEA, nor in our case law, compels the result reached by the majority. In fact, the opposite is true. Finding no Wisconsin law to support its conclusions, the majority's con-

clusion rests upon its agreement with federal court opinions which, in applying Title VII, conclude that unless an employee is discharged or constructively discharged he or she is not entitled to back pay or reinstatement. We are under no obligation to follow federal courts in interpreting Wisconsin law, and indeed there is good reason not to follow them when interpreting WFEA.

WFEA contains an explicit directive from the legislature, not present in Title VII, to liberally construe the provisions of the WFEA to accomplish its purposes. *See* sec. 111.31(3), Stats. These purposes are to make victims of discrimination whole and discourage discriminatory practices in the employment area. *See* sec. 111.31(3). *See also Watkins v. LIRC,* 117 Wis. 2d 753, 345 N.W.2d 482 (1984); *Anderson v. Labor & Industry Rev. Comm.,* 111 Wis. 2d 245, 330 N.W.2d 594 (1983).

In applying the constructive discharge doctrine, neither of these purposes is accomplished. The employee is not made whole; in fact, she gets nothing. Discriminatory employment practices are not discouraged. Quite the opposite, Marten Transport is able to accomplish what it set out to do when it refused to hire Connie Liebrandt because she was a woman: it does not have to re-hire her.

The constructive discharge doctrine is an antiquated, patronizing concept that ought not be given any weight in interpreting our own state statute. Just a few short months ago when faced with this very same question under the Wisconsin Family Medical Leave Act (FMLA), this court unanimously rejected the doctrine concluding:

> The FMLA does not state that a constructive discharge is a requirement for reinstatement or back pay. Kelly Company cites nothing from the legisla-

tive history indicating that a constructive discharge is a prerequisite to reinstatement or an award of back pay. We conclude that the only prerequisite to an order for reinstatement and back pay is that the employer violated the FMLA. *Kelley Co., Inc. v. Marquardt,* 172 Wis. 2d 234, 255, 493 N.W.2d 68 (1992). (Footnote omitted).

Just as in the FMLA, the WFEA does not state that a constructive discharge is a requirement for reinstatement or back pay. Nor does Marten Transport cite any legislative history indicating that a constructive discharge is a prerequisite to reinstatement of an award of back pay under the WFEA. Yet, a majority of this court today abandons its own analysis from its recent decision in *Marquardt,* and concludes that despite no Wisconsin legislative indication that the constructive discharge doctrine applies, despite the WFEA mandate to liberally construe its provisions to make victims whole, Connie Liebrandt, a victim of discrimination, is entitled to nothing because she was not constructively discharged. The language of the statute does not support this conclusion, nor does the legislative history of WFEA or public policy.

I would hold that a finding of discrimination alone entitles a plaintiff to redress. No public policy is served by a conclusion otherwise. The majority states the following as public policy in support of its position: employees should be forced to stay with their discriminatory employers or lose their remedies because cutting-off back pay and reinstatement to employees who voluntarily leave employment while their claim is processed encourages employees to stay at the place of employment in order to give employers a chance to remedy the discrimination. Remedying discrimination is certainly a laudable goal. But should the law require a victim to

1033

carry the burden of changing someone's or some entity's unlawful behavior? Do victims of malpractice have to continue to be serviced by their negligent doctors in order to give the doctor the chance to improve or correct his or her skills or risk being compensated for the doctor's negligence? Do victims of a domestic assault have to stay in an abusive marriage in order to give the abusive spouse a chance to change his or her behavior or risk damages to which they may be entitled? Do children who are the victims of incest need to remain with their abusive parents in the hopes that they will be able to cure the abusive behavior? Of course not, and no one should ever suggest otherwise. The point is that victims should in no way have the obligation of changing the unlawful behavior of their assailants.

The constructive discharge doctrine ignores the reality of discrimination. Discrimination is a degrading, humiliating, debilitating experience for its victims. Requiring a victim to stay in that setting or lose what they are entitled to is as outrageous as the hypotheticals posed above.

The fear that countless numbers of employees who perceive they are victims of discrimination, but in reality are not, would walk off the job is groundless. Employers have nothing to fear from a rejection of the constructive discharge doctrine. If this court were to reject the constructive discharge doctrine, the result would be that only those who are truly discriminated against could leave their employment and receive back pay and reinstatement. If an employee quits and it is later determined that no discrimination occurred, the employee is out of a job with no back pay. Hence, quitting would be an enormous gamble for an employee, a gamble that will surely be taken only by those who feel quite certain that discrimination has occurred. Quitting under a questiona-

1034

ble discrimination claim may result in permanent loss of employment.

During the Clarence Thomas hearings before the Senate Judiciary Committee, questions were raised with respect to why, if Anita Hill was truthful about the harassing treatment she testified to, did she simply not leave her employment. The majority answers that question today. The majority says that an employee has no choice but to stay with a discriminatory employer if he or she wants to ensure the remedy to which he or she is entitled. As the Anita Hill controversy teaches, it is not an uncommonly held belief that employees are free to walk off their jobs if they are the victims of discriminatory treatment. Finders of fact might automatically question the veracity of a discrimination claim when the employee has stayed with the employer. In future cases, these finders of fact are entitled to know, and should be advised, that under this court's dictates the employee had no choice but to stay.

I would hold that if discrimination did not in fact occur, a person who walks off the job due to perceived discrimination is not entitled to reinstatement or any back pay. But I would further hold that if an employee walks off the job due to discrimination which is subsequently proved, back pay and reinstatement should be ordered. Once discrimination has been proved, once it is clearly established that discrimination was not a figment of the employee's imagination, *ipso facto* a hostile work environment has been established. An employee should not be forced to remain in that environment, an environment already rife with stress and tension due to the discriminatory practice, then exacerbated by the filing of a lawsuit.

Back pay and reinstatement is the only fair, just, and equitable result in this case. As stated so forcefully

in a recently filed dissent, "this state should continue its lead in assuring that individuals who are the victims of sex discrimination in the work place are 'made whole' . . . discrimination in the work place is an evil that must be eradicated . . . and those individuals who are the victims of such discrimination should be made whole . . ." *Duello v. Board of Regents of the University of Wisconsin System,* 176 Wis. 2d 961, 984, 501 N.W.2d 38 (1993).

I would affirm the court of appeals and order back pay and reinstatement.

I am authorized to state that Chief Justice NATHAN S. HEFFERNAN and SHIRLEY S. ABRAHAMSON join in this dissent.